# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49871-5-II |
| Respondent, | |
| v. | |
| PURCELL DEVOIR TOSTON, JR., | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON J. — Purcell D. Toston, Jr. appeals his conviction for second degree assault. He argues that the trial court erred by instructing the jury as to the common, dictionary definition of fracture and erred by refusing to instruct the jury on the lesser included offense of fourth degree assault. And he argues that there was insufficient evidence to support the jury's verdict. Finally, Toston argues that the trial court imposed an unconstitutionally vague community custody condition requiring that he comply with additional conditions imposed by the Department of Corrections through his community corrections officer (CCO), and Toston argues that the trial court erred by imposing discretionary legal financial obligations (LFOs) without adequately inquiring into his ability to pay.

The trial court did not err by giving an instruction on the common, dictionary definition of fracture or by refusing to give the lesser included offense instruction, and there was sufficient evidence to support the jury's verdict. And we decline to address Toston's vagueness challenge because it is not ripe. But the trial court erred by imposing discretionary LFOs without conducting

an adequate inquiry into Toston's ability to pay. Accordingly, we affirm Toston's conviction, but we reverse the trial court's imposition of the discretionary LFO's and we remand for the trial court to make an adequate inquiry before imposing discretionary LFOs.

FACTS

The State charged Toston with one count of second degree assault against Geovanny Blanco. Toston's jury trial was held on October 31, 2016.

Blanco testified that he and Toston were both patients at American Behavioral Health Systems. On September 3, 2016, Toston punched Blanco in the face. Blanco suffered a chipped tooth.

Toston proposed jury instructions for the lesser included offense of fourth degree assault. The State objected and argued that there was no evidence that Toston committed only fourth degree assault. In response, the following exchange took place:

> [COURT]: The question is, even though whether there was a fracture or not is a jury question, where is the evidence to support that only assault in the fourth degree was committed? In other words, where is the evidence that this was not a fracture or this was not a bodily part, whichever way you choose to argue it?
>
> [DEFENSE COUNSEL]: I'd concede, Your Honor, there is none.

Verbatim Report of Proceedings (VRP) at 144-45.

The State also proposed a jury instruction defining "fracture" for the purposes of substantial bodily harm. The instruction stated,

> Fracture means: the act or process of breaking or the state of being broken; the breaking of hard tissue; the rupture (as by tearing) of soft tissue.

Clerk's Papers (CP) at 40. Toston objected to the instruction. The trial court ruled,

> I know this is different, but the pattern instructions do not say, okay, you can use these and only these. So the question is, then, is it a correct definition

legally, and it looks like it; and (2) is it factually supported. And then I guess the third is would it be helpful to the jury? And I think I'd answer all three of those questions "yes."

VRP at 139. The trial court gave the State's proposed definition of fracture.

The jury found Toston guilty of second degree assault. The trial court imposed a standard range sentence. The trial court also imposed mandatory and discretionary LFOs. Before imposing discretionary LFOs, the trial court questioned the defendant about his ability to pay:

[COURT]: That actually wasn't my question. My question is whether you have the ability to pay this, or is there something about you physically, mentally, emotionally or financially or anything else.

[TOSTON]: All of it, no.

VRP at 184. The trial court also imposed "[o]ther conditions: as ordered by CCO." CP at 56. Toston appeals.

## ANALYSIS

### I. JURY INSTRUCTIONS

Toston argues that the jury instruction defining fracture was an impermissible judicial comment on the evidence. And Toston argues that the trial court erred by refusing to give his proposed instructions on the lesser included offense of fourth degree assault. We disagree.

A DEFINITION OF FRACTURE

We review constitutional issues de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). Article IV, section 16 of the Washington State Constitution prohibits trial judges from commenting on the evidence presented at trial. *State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996). An impermissible comment on the evidence is one that conveys the judge's attitude on the merits of the case or permits the jury to infer whether the judge believed or disbelieved

certain testimony. *Deal*, 128 Wn.2d at 703. But a jury instruction that does no more than accurately state the law is not an impermissible comment on the evidence. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

The trial court does not err by giving an instruction that is accurate and merely supplements and clarifies statutory language. *State v. Atkinson*, 113 Wn. App. 661, 667-68, 54 P.3d 702 (2002) (the trial court did not err by instructing the jury on the dictionary definition of disfigurement). Here, the trial court used the dictionary definition of "fracture" for the jury instruction. CP at 40;; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 901 (3rd ed. 2002). Therefore, whether the trial court properly gave the instruction depends on whether the legislature intended the term fracture to be given its common, dictionary definition.

We review questions of statutory interpretation de novo. *State v. Landsiedel*, 165 Wn. App. 886, 890, 269 P.3d 347 (2012). Our primary duty in statutory interpretation is to ascertain and carry out legislative intent. *Landsiedel*, 165 Wn. App. at 890. "Statutory interpretation begins with the statute's plain meaning." *Landsiedel*, 165 Wn. App. at 890. When the plain language of the statute is unambiguous, the legislative intent is apparent and we will not construe the statute otherwise. *Landsiedel*, 165 Wn. App. at 890.

When a term used in a statute is not defined, we may rely on the ordinary meaning of the term from the dictionary. *State v. Edwards*, 84 Wn. App. 5, 10, 924 P.2d 397 (1996). However, "[w]hen a technical term is used in its technical field, the term should be given its technical meaning by using a technical rather than a general purpose dictionary to resolve the term's definition." *State v. Torres*, 198 Wn. App. 864, 884, 397 P.3d 900, *review denied*, 189 Wn.2d 1022 (2017).

To prove second degree assault, the State must prove that a person assaulted another and recklessly inflicted substantial bodily harm. RCW 9A.36.021. "'Substantial bodily harm'" includes bodily injury "which causes a fracture of any bodily part." RCW 9A.04.110(4)(b). The Washington Criminal Code does not define the term fracture.

Toston argues that because the term fracture has a technical, medical definition that the term should have been given its technical, rather than its dictionary definition. However, in the Washington Criminal Code, fracture is not being used in the technical field. Toston relies on *Gorre v. City of Tacoma*, 184 Wn.2d 30, 357 P.3d 625 (2015), but *Gorre* interpreted medical terms based on the medical definition within the context of the Industrial Insurance Act (IIA)[1]. 184 Wn.2d at 37-38. The IIA is a technical statutory scheme providing comprehensive benefits for workplace related injuries. Ch. 51.32 RCW. Therefore, the IIA applies within the technical field of medicine. Similarly, in *State v. Torres*, Division Three of this court applied a technical railway definition of operating mechanism to chapter 81.60 RCW regarding Railroad Police and Regulations. 198 Wn. App. at 884. There, the term was being used specifically in the technical field of railroad regulation.

Since at least 1984, it has been established that when terms are undefined in the criminal code, juries will rely on their common sense and common experience to interpret and apply those terms. *State v. Welker*, 37 Wn. App. 628, 638 n.2, 683 P.2d 1110 (1984). We presume that the legislature is familiar with judicial interpretations of statutes. *State v. Ervin*, 169 Wn.2d 815, 825, 239 P.3d 354 (2010). Therefore, if the legislature had intended a specific, technical interpretation

---

[1] Title 51 RCW.

of a term in the criminal code, rather than a common sense definition, it could have specifically included that definition. Because the legislature chose not to do so, we apply the common, dictionary definition of fracture as an expression of legislative intent.

Because the common, dictionary definition of fracture is the appropriate expression of legislative intent, the trial court's instruction defining fracture was accurate. And because the jury instruction did no more than provide the jury with an accurate definition of a term to supplement and clarify the statutory language, the jury instruction was not an improper judicial comment on the evidence. Accordingly, the jury instruction was proper and the trial court did not err by giving it.

B. LESSER INCLUDED OFFENSE

A party is entitled to a jury instruction on a lesser included offense if (1) the elements of the lesser included offense are a necessary element of the charged crime and (2) the evidence supports an inference that the lesser included offense was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Here, the first prong of the *Workman* test, the legal prong, is satisfied because the elements of fourth degree assault are necessary elements of second degree assault. RCW 9A.36.041; RCW 9A.36.021. Accordingly, the issue is whether the evidence supported giving instructions for fourth degree assault under the second, factual, prong. *See State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997).

We review the trial court's decision on the second prong of the *Workman* test for an abuse of discretion. *State v. Chambers*, 197 Wn. App. 96, 120, 387 P.3d 1108 (2016). Under the second prong,

6

the court asks whether the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense. The evidence must affirmatively establish the commission of the lesser offense; it is not enough that the jury might disbelieve the evidence pointing to guilt. If a jury could rationally find a defendant guilty of the lesser offense and not the greater offense, the jury must be instructed on the lesser offense. In determining whether the evidence supports an inference that the lesser crime was committed, we review the evidence in the light most favorable to the party requesting the instruction.

*Chambers*, 197 Wn. App. at 120 (citations omitted) (internal quotation marks omitted). A person is guilty of fourth degree assault if he or she assaults another under circumstances not amounting to first, second, or third degree assault or custodial assault. RCW 9A.36.041.

As explained above, the trial court properly defined "[f]racture" as "the act or process of breaking or the state of being broken; the breaking of hard tissue; the rupture (as by tearing) of soft tissue." CP at 40. And it is undisputed that Toston broke Blanco's tooth when he punched Blanco in the face. Therefore, there is no evidence that fourth degree assault—an assault that does not result in substantial bodily harm—was committed. Because there is no evidence that only fourth degree assault was committed, Toston was not entitled to jury instructions on the lesser included offense of fourth degree assault as a lesser included offense. Accordingly, the trial court did not err by refusing to instruct the jury on the lesser included offense of fourth degree asssault.

## II. SUFFICIENCY OF THE EVIDENCE

Toston argues that the evidence was insufficient to support the jury's verdict because the State failed to present sufficient evidence of substantial bodily harm. We disagree.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable

inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201.

A person is guilty of second degree assault if he or she intentionally assaults another and recklessly inflicts substantial bodily harm. RCW 9A.36.021. "'Substantial bodily harm'" means (1) bodily injury which involves a temporary but substantial disfigurement, (2) bodily injury which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or (3) bodily injury which causes a fracture of any bodily part. RCW 9A.04.110(4)(b). As explained above, the trial court properly defined "[f]racture" as "the act or process of breaking or the state of being broken; the breaking of hard tissue; the rupture (as by tearing) of soft tissue." CP at 40. And instructed that an "assault" is an "intentional touching or striking of another person that is harmful or offensive." CP at 38.

Here, the State presented sufficient evidence to prove Blanco suffered a fracture because Blanco testified that Toston's punch broke his tooth. And the State presented sufficient evidence of assault because Toston's punch was an intentional striking of Blanco that caused him substantial bodily harm. Therefore, the State presented sufficient evidence to support the jury's verdict finding Toston guilty of second degree assault.

## III. COMMUNITY CUSTODY CONDITION

Toston argues that the community custody condition requiring compliance with additional conditions imposed by the Department of Corrections through his CCO is unconstitutionally

vague. The State argues that Toston's pre-enforcement challenge to a community custody condition is not ripe for review. We decline to review Toston's challenge because it is not ripe.

A pre-enforcement challenge to a community custody provision must be ripe for review. *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015). The challenge is ripe "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Cates*, 183 Wn.2d at 534 (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)). In addition, we consider the hardship to the appellant if we refuse to review the challenge on direct appeal. *Cates*, 183 Wn.2d at 534.

Here, the issue raised by Toston is primarily legal because we review constitutional vagueness challenges de novo. *See Vance*, 168 Wn.2d at 759. The challenged action also does not require additional factual development because Toston is arguing that the provision is void for vagueness on its face. And, the challenged action is final. However, there is no hardship to the appellant if we refuse to review the challenge on direct appeal.

Toston is not under any restraint from the current community custody condition. Conditions that impose hardship on appellants "'immediately restrict the petitioner['s] conduct upon their release from prison.'" *Cates*, 183 Wn.2d at 536 (quoting *Sanchez Valencia*, 169 Wn.2d at 791). Here, there is no restriction on Toston's conduct unless or until his CCO imposes additional conditions upon him. And Toston will not even have an assigned CCO until after his release from prison. Therefore, the challenged condition does not impose any hardship on Toston. We decline to review Toston's pre-enforcement challenge to the community custody condition.

IV. DISCRETIONARY LFOS

Toston argues that the trial court erred by failing to conduct an adequate inquiry into his ability to pay the discretionary LFOs. The State concedes that the trial court's inquiry was inadequate. We accept the State's concession. Therefore, we reverse the trial court's imposition of the discretionary LFOs, and we remand to the trial court for an adequate inquiry into Toston's ability to pay discretionary LFOs.

RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015), require that the trial court engage in an individualized inquiry into a defendant's ability to pay before imposing discretionary LFOs. The trial court's inquiry should consider "important factors" such as the defendant's incarceration and the defendant's other debts. *Blazina*, 182 Wn.2d at 838. Here, the trial court did nothing more than ask Toston if there was any reason he would not be able to make a $25 monthly payment. *Blazina* requires more. Therefore, the State's concession is proper. We reverse the trial court's imposition of the discretionary LFOs, and we remand for the trial court to make an adequate inquiry into Toston's ability to pay before imposing discretionary LFOs.

No. 49871-5-II

 We affirm Toston's conviction for second degree assault. But we reverse the trial court's imposition of the discretionary LFOs, and we remand to the trial court to make a proper inquiry into Toston's ability to pay before imposing discretionary LFOs.

 A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._

SUTTON, J.

We concur:

_Bjorgen, J._

BJORGEN, P.J.

_Marilyn K. Haan_

HAAN, J.P.T.