IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79418-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| BENJAMIN MICHAEL DUSCHENE, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — After a stipulated bench trial, the trial court found Benjamin DuSchene guilty of three counts of first degree child molestation. The trial court denied DuSchene's request for a Special Sex Offender Sentencing Alternative (SSOSA) and imposed an indeterminate sentence of 98 months. DuSchene appeals, claiming the trial court erred by denying a SSOSA, imposing various conditions of community custody, and imposing an interest accrual provision on his Judgment and Sentence. We affirm, but remand to strike the interest accrual provision.

I. BACKGROUND

The State charged DuSchene with two counts of first degree child molestation and one count of first degree rape of a child. The State amended the information to add three counts of first degree child molestation. DuSchene agreed to a stipulated bench trial on just three child molestation charges and, in exchange, the State agreed to dismiss two counts of child molestation and the

Citations and pin cites are based on the Westlaw online version of the cited material.

rape charge. The agreement benefitted the minor victims and DuSchene: the victims would not have to testify and risk being re-traumatized and DuSchene, because of the dropped charges, would be eligible to request a SSOSA. If DuSchene received a SSOSA, the court would impose a suspended sentence, a maximum 12-month term, and a term of community custody equal to the length of the suspended sentence, with a treatment period of up to five years. RCW 9.94A.670(5).

After the agreement to proceed to a stipulated bench trial and before trial and sentencing, DuSchene's counsel, David Gehrke, retired.

In the same time period, the minor victims' parents provided impact statements as a part of a presentencing report. Their father stated that he did not want his daughters to have to testify, "so if it means he gets the SSOSA then so be it. If not for that, I would want him to get the maximum time in prison." Their mother stated: "I want him to do time—my daughters were terrified to testify, so we were okay with the SSOSA. But he deserves the maximum and I would like to see him get that." She also stated: "[t]he best closure that we can get is to know that this will never happen to another family. Feel significant jail time is needed in his case."

The minor victims provided impact statements directly to the court. One of the victims stated that she wanted him "to go to jail for a long time so he doesn't hurt any other [families]." Another stated that she would "like him to get the maximum time in jail as you think is the best for what he did . . . to me."

The trial court found DuSchene guilty of three counts of child molestation. The court sentenced him the same day. The State requested a standard-range sentence of 120 months. DuSchene requested a SSOSA. Mike Kelly represented DuSchene.

Before deciding whether to grant the SSOSA, the sentencing court expressed confusion, based on the impact statements, as to whether the minor victims and their parents opposed the SSOSA. Since, after entering into the stipulated bench trial, there was no possibility that the victims would testify, the court expressed uncertainty as to why the parents would thereafter state that they would not oppose the SSOSA so long as the minor victims would not have to testify. The sentencing court wondered whether the victims understood the process and asked the State to clarify their responses. The State responded:

> The parents . . . were mostly concerned with the fact that, A, they— all of them feel that Mr. [DuSchene] needs treatment. I don't think that's any sort of question there. They were mostly concerned of not having to put their children through the trauma of testifying, and thought that if he were to receive a SSOSA they would be okay with that, not having to re-traumatize their children and that he did need treatment. But certainly given what happened to their kids and the victims themselves want him to be held accountable and to do, you know, some time in custody certainly, or as much time in custody as the Court is willing to give him in order to take responsibility for these things given the impact that it's had on the children.
>
> So I would say that as far as the Court is taking into consideration whether the victims are opposed to a SSOSA, I do not believe that they are opposed to a SSOSA, which is why we proceeded in the first place. But I think that they do definitely want him held accountable.

The sentencing court responded that the question was not whether the victims opposed the SSOSA, but whether they were in favor of it. The State responded:

3

"I don't think that they are in favor of it. I think their main reasoning for having him do the SSOSA was to not have the girls have to testify and re-traumatize them, and I think that is clear from at least [the mother's] statement."

The court asked Kelly whether he had anything to add. Kelly responded:

No. I guess what I would say, and as Your Honor is aware, I wasn't there, Mr. Gehrke was still practicing at that time, but what I would say is I believe to me it seems clear, that that is the reason for the stipulated facts trial. In other words, the concerns Your Honor just outlined, sort of, was the parties came to that agreement [for a stipulated bench trial] because, in part, these victims said go—let him go ahead with the SSOSA if we don't have this trial, this actual jury trial where we testify.

The court responded: "I don't know that I interpret it that way. That's why I'm struggling with it."

The trial court declined DuSchene's request for a SSOSA and sentenced him within the standard range to 98 months, with his ultimate term to be determined by the Indeterminate Sentencing Review Board. In doing so, the sentencing court stated:

First of all, it says that the Court's supposed to give great weight to the victim's opinion, and the opinion, as I understand it, essentially, is that the children themselves who wrote me the statements and the parents are opposed to this alternative. If it were entered into solely for purposes of avoiding them having to testify at trial, then they reluctantly were in agreement with it. Based on the way that the case was resolved, there was no chance that the children were going to have to testify once there was a stipulated bench trial. The State did not indicate they were in agreement with the request, but they indicated they would not be opposed to the defense making that request, and ultimately, that was what was bargained for between the parties.

The trial court also imposed various terms of community custody and an interest accrual provision on his Judgment and Sentence. DuSchene appeals.

4

## II. ANALYSIS

### A. SSOSA

On multiple grounds, DuSchene argues that the trial court erred in denying his request for a SSOSA. First, he claims that it failed to consider all the sentencing factors required by RCW 9.94A.670(4). Next, he argues that whether the victims favored a SSOSA was a disputed fact, so the court either should have disregarded their impact statements or ordered an evidentiary hearing to determine their opinions. The State argues that the sentencing court considered all the necessary factors, and that there were no disputed facts, so the trial court did not err in denying a SSOSA. We agree with the State.

We review for abuse of discretion a trial court's decision on a request for a SSOSA. State v. Osman, 157 Wn.2d 474, 482, 139 P.3d 334 (2006). "A court abuses its discretion if it categorically refuses to impose a particular sentence or if it denies a sentencing request on an impermissible basis." Osman, 157 Wn.2d at 482.

A defendant generally may not appeal a standard range sentence. Osman, 157 Wn.2d at 481; RCW 9.94A.585(1). But they "may appeal a standard range sentence if the sentencing court failed to comply with procedural requirements of the [Sentencing Reform Act (SRA)] or constitutional requirements." Osman, 157 Wn.2d at 481–82. Here, DuSchene challenges his standard range sentence, but argues that the trial court violated procedural requirements of the SRA by failing to consider factors under RCW 9.94A.670(4) and failing to order an evidentiary hearing as required by RCW 9.94A.530(2).

5

Consequently, RCW 9.94A.585(1) does not prohibit consideration of these issues.[1]

1.  RCW 9.94A.670(4) factors

DuSchene claims the trial court failed to consider two of the six factors that, under RCW 9.94A.670(4), it must consider in determining whether to grant a SSOSA. Specifically, DuSchene argues the trial court did not consider whether the alternative sentence was too lenient or whether he had victims in addition to the victims of the offenses involved. We disagree.

Before deciding whether to grant a defendant's request for a SSOSA, the sentencing court must consider the following factors:

> [W]hether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section.

RCW 9.94A.670(4).

In opposing DuSchene's request for a SSOSA, the State indicated:

> However, only having potentially 12 months in custody and with treatment, I do look at the criterion that states whether it's too lenient

---

[1] DuSchene also claims, in support of his argument that the sentencing court erroneously denied his SSOSA request, that the State violated the advocate-witness rule by "testifying" as to its impression of the victim's opinions of the SSOSA request. But this claim raises neither procedural issues under the SRA nor constitutional issues. Also, he did not object on these grounds at the trial court, and he provides no legal authority suggesting we must consider it for the first time on appeal. RAP 2.5(a). Thus, we decline to consider it. In any event, if the State was merely interpreting the uncontested contents of the victims' impact statements, the rule does not appear to apply. RPC 3.7(a)(1) ("A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to an uncontested issue.").

in light of the circumstances and the facts and the crimes alleged, and in this case, it's not just one victim, there's three victims and multiple times that each of these victims were victimized.

The trial court, after indicating that it would deny a SSOSA on the ground that

DuSchene presented too much danger to the community, stated:

I will indicate to you, just so it's clear, that I have over the objections of victims provided people with SSOSAs that the victims were opposed to, but I don't find this is a proper case for that. It's true, you don't have any prior history, but you engaged in these behaviors with these children. There was three victims, not one. And as one basically changed their behavior patterns, instead of realizing and taking more action to prohibit your behaviors or to get assistance related to it, you just moved on to the next child. And at least from what I reviewed, this family's devastated and has been devastated.

In the context of the State's assertion that a SSOSA would be too lenient

because DuSchene had three victims, the sentencing court's recognition of the

same fact shows it considered whether a SSOSA would be too lenient. The

court's observation that DuSchene moved from victim to victim and the impact on

the victims' family also demonstrates its consideration of whether a SOSSA

would be too lenient. And by stating that DuSchene had no prior criminal history,

the trial court recognized that there were no other victims in addition to the

victims of this offense. The sentencing court considered the factors in question,

so DuSchene's claim on this ground fails.

2.   Disputed facts

DuSchene claims that whether the victims favored a SSOSA was a

disputed fact at sentencing. Thus, he argues, the trial court should have either

disregarded their impact statements or ordered a hearing to determine their

opinions. We disagree.

7

In determining any sentence, RCW 9.94A.530(2) prohibits a court from relying on information not admitted, acknowledged, or proved at trial or at the time of sentencing. If the defendant disputes any material facts, the sentencing court must either not consider the fact or grant an evidentiary hearing on the point. RCW 9.94A.530(2). "In order to dispute any information presented at the sentencing hearing, the defendant must make a *specific*, timely challenge. The defendant need not move for an evidentiary hearing; however, it is the [sentencing] court's responsibility under RCW 9.94A.530(2) to hold an evidentiary hearing if it wants to consider disputed facts." State v. Crockett, 118 Wn. App. 853, 858, 78 P.3d 658 (2003) (internal citation omitted) (emphasis added).

In deciding on a defendant's request for a SSOSA, a sentencing court must give "great weight" to the victims' opinions of the request. RCW 9.94A.670(4). Unless the parent or guardian is also the perpetrator of the offense, the parent or guardian of a minor victim is also a victim. RCW 9.94A.670(1)(c).

At sentencing, the State reasonably interpreted the parent victims' statements to mean that they did not favor a SSOSA as the entry into a stipulated bench trial eliminated the possibility of the minor victims testifying. In response, DuSchene's counsel did not raise any dispute with respect to the contents of any of the victims' statements. Nor did he claim that there was any other source of information regarding the victims' opinions. Instead, he initially said, "I wasn't there" at the time of the agreement for a stipulated bench trial. He

8

did not specifically challenge the State's interpretation of the parents' statements. He did say, "[T]he parties came to that agreement [for a stipulated trial] because, in part, these victims said go – let him go ahead with the SSOSA if we don't have this trial, this actual jury trial where we testify." If, in saying this, counsel meant that the parents favored a SSOSA, there was no reasonable basis for the interpretation. The minor victims' statements say nothing about a SSOSA. And the parent victims' statements indicated that they favored the stipulated trial, even if it meant DuSchene could request a SSOSA, as it avoided the need for the children to testify—they in no way indicated that they wanted a stipulated trial *because* it meant DuSchene would receive a SSOSA. In any event, because, as required by Crockett, Kelly did not specifically challenge the State's interpretation of the victim impact statements, there was no dispute and the sentencing court did not err.

In light of the foregoing, we conclude that the court did not abuse its discretion in denying the SSOSA.

B. Community Custody Conditions

DuSchene argues that we should remand to strike various community custody conditions from his Judgment and Sentence because they violate his statutory and constitutional rights. The State disagrees, but in any event argues that DuSchene cannot bring these challenges for the first time on appeal, because he invited any such error. We affirm his community custody conditions.

The State correctly notes that where a defendant agrees, without objection, to community custody conditions, they cannot argue for the first time

9

on appeal that the conditions are not crime related, as they have invited any resulting error. See State v. Casimiro, 8 Wn. App. 2d 245, 248–49, 438 P.3d 137 (2019); RAP 2.5(a)(3); see also State v. Peters, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019) (declining to consider an argument that a sentencing condition is not crime related where the defendant raised the issue for the first time on appeal). Here, DuSchene agreed to the community custody conditions without objection. DuSchene argues for the first time on appeal that conditions 10 and 15 are not crime related; we do not consider these claims, because he invited any such error.

The State also argues that we need not consider DuSchene's constitutional challenges to his community custody conditions. But we may consider challenges to sentencing conditions that are final, primarily legal, and do not require further factual development. State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015). Courts will regularly consider vagueness challenges to community custody conditions, even for the first time on appeal. Casimiro, 8 Wn. App. 2d at 250.

We review community custody conditions for an abuse of discretion, and reverse conditions "only if they are manifestly unreasonable." Peters, 10 Wn. App. 2d at 583. "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional questions de novo." State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

1. Condition 6

In his Statement of Additional Grounds (SAG), DuSchene argues that condition 6, which requires him to "[p]articipate in polygraph examinations as directed by the supervising Community Corrections Officer, to ensure conditions of community custody," is unconstitutionally vague and violates his First and Fifth Amendment rights under the United States Constitution. We disagree.

DuSchene argues this condition is unconstitutionally vague, because polygraph testing may be used only to monitor compliance with other community custody conditions, "and not used as a fishing expedition to discover evidence of other crimes past or present." Thus, he argues we should strike the condition or modify it to only allow polygraph testing to ensure compliance with community custody conditions. But the condition already contains such a limitation. Thus, we need not alter it.

DuSchene argues that this condition violates his right to free speech under the First Amendment, and his right not to self-incriminate under the Fifth Amendment. He cites no legal authority to support this argument. Thus, we decline to consider it. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by legal authority need not be considered).

2. Condition 7

In his SAG, DuSchene argues the sentencing court erred by imposing condition 7, which requires him to "[s]ubmit to plethysmograph testing, as directed by a certified sexual deviancy treatment provider," because he is not a

sexually violent predator and because it violates his right to privacy and Eighth Amendment rights under the United States Constitution. We disagree.

Courts need not conclude a defendant is a sexually violent predator to order plethysmograph testing. See State v. Johnson, 184 Wn. App. 777, 780, 340 P.3d 230 (2014) (holding that a court may order plethysmograph testing if it also orders a crime-related treatment regimen for sexual deviancy). DuSchene's challenge on this ground fails.

DuSchene cites no legal authority to support his Eight Amendment argument, so we decline to consider it. See Cowiche, 118 Wn.2d at 809.

3.  Condition 10

In his SAG, DuSchene argues the sentencing court imposed condition 10, which requires him to consent to Department of Corrections (DOC) home visits and allow for visual inspections of his residence,[2] in violation of his Fourth Amendment rights under the United States Constitution. He also argues the condition is not crime related. As discussed above, we decline to consider his assertion that the condition is not crime related. We also conclude his constitutional challenge is not yet ripe for review, since it requires further factual development.

---

[2] Condition 10 states, in full: "You must consent to DOC home visits to monitor your compliance with supervision. Home visits include access for purposes of visual inspection of all areas of the residence in which you live or have exclusive or joint control and/or access."

In Cates, our Supreme Court declined to consider a preenforcement challenge to a substantially similar community custody condition[3] on the grounds that the challenge was not yet ripe. 183 Wn.2d at 536. The court reasoned that it could not consider the constitutionality of the condition without further factual development. As in Cates, DuSchene's challenge to this condition will not become ripe until he is released from confinement and the State attempts to enforce the condition by requesting and conducting a home visit. 183 Wn.2d at 535. DuSchene makes no argument distinguishing Cates. Thus, we decline to consider his challenge.

4. Condition 14

DuSchene argues that condition 14, which prohibits him from entering areas where children's activities regularly occur or are occurring,[4] is unconstitutionally vague in violation of due process and infringes on his First Amendment to free exercise of religion under the United States Constitution. We disagree.

---

[3] The community custody condition in Cates stated: "You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to." 183 Wn.2d at 533.

[4] Condition 14 states, in full:

Stay out of areas where children's activities regularly occur or are occurring. This includes, but is not limited to: parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, church services, restaurants, and any specific location identified in advance by [the Department of Custody] or [a Community Custody Officer].

a. Vagueness

Specifically, DuSchene argues that the phrase "areas where children's activities regularly occur" is unconstitutionally vague, because it provides no standards for determining the frequency or regularity with which the activities must occur for him to avoid a location. He also argues that the illustrative list includes several areas that are not used solely for children's activities, such as swimming pools, sports fields, arcades, church services, and restaurants. Finally, he argues that the condition's grant of authority to the DOC or a Community Custody Officer (CCO) to determine whether a specific location is prohibited invites arbitrary enforcement in violation of due process.

A community custody condition is unconstitutionally vague, under due process principles of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, if either a reasonable person would not understand what conduct the condition prohibits or if it lacks ascertainable standards that prevent arbitrary enforcement. Casimiro, 8 Wn. App. 2d at 250 (citing State v. Bahl, 164 Wn.2d 739, 752–53, 193 P.3d 678 (2008)); see also Wallmuller, 194 Wn.2d at 238.

Our Supreme Court recently decided that a similar community custody decision was not unconstitutionally vague in Wallmuller. 194 Wn.2d at 245. The condition in Wallmuller stated: "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls." 194 Wn.2d at 237. The Court reasoned that "'commonsense' restrictions, including those that use nonexclusive lists to

14

elucidate general phrases like 'where children congregate,'" provide fair notice of prohibited conduct. Wallmuller, 194 Wn.2d at 242–43.

Addressing DuSchene's first argument, much like the condition in Wallmuller, condition 14 uses a nonexclusive list to illustrate the general phrase "areas where children's activities regularly occur or are occurring." "Areas where children's activities regularly occur" is no less precise than "places where children congregate." The language in condition 14 is specific enough that a person of ordinary intelligence can understand the scope of its prohibition, so it is not unconstitutionally vague.

DuSchene cites no legal authority in support of his additional argument that such illustrative lists may only include areas exclusively used for children's activities. We need not consider arguments not supported by legal authority. See Cowiche, 118 Wn.2d at 809. Furthermore, the condition upheld by our Supreme Court in Wallmuller also included areas not exclusively used for children's activities. 194 Wn.2d at 236. This argument fails.

Finally, DuSchene argues that the condition's grant of discretion to DOC and the CCO to add locations to the illustrative list invites arbitrary enforcement. He analogizes to State v. Irwin, where we remanded to strike a community custody condition that allowed the supervising CCO to define the areas where minor children might congregate and did not provide an illustrative list. 191 Wn. App. 644, 649, 655, 364 P.3d 830 (2015). But unlike in Irwin, here, the DOC or a CCO may only clarify the definition of condition 14 in advance, eliminating the risk that DuSchene will inadvertently violate the condition. The condition's

illustrative list also limits the DOC and CCO's discretion to designate locations to avoid. Thus, the condition does not invite arbitrary enforcement in violation of due process.

        b.  Free exercise of religion

DuSchene also argues that, because this condition prohibits him from attending church services, it violates his First Amendment right to free exercise of religion. Because DuSchene has not established that the condition has a coercive effect, his claim fails.

The Washington and United States Constitutions protect the free exercise of religion. U.S. CONST. Amend. I; CONST. art. I, § 11. A burden on the exercise of religion, such as a community custody condition prohibiting the defendant from attending church services, must withstand strict scrutiny. State v. Balzer, 91 Wn. App. 44, 53, 954 P.2d 931 (1998). "Under this standard, the complaining party must first prove the government action has a coercive effect on [their] practice of religion." Balzer, 91 Wn. App. at 53. To show coercive effect, the complaining party must first show that they sincerely hold their religious convictions, and that the convictions are central to the practice of their religion. Balzer, 91 Wn. App. at 54. Next, they must show the challenged enactment burdens their free exercise of religion. Balzer, 91 Wn. App. at 54. Once the complaining party establishes a coercive effect, the burden of proof shifts to the government to show the restrictions serve a compelling state interest and are the least restrictive means for achieving that interest. Balzer, 91 Wn. App. at 53–54.

16

The record shows that DuSchene has regularly attended church in the past, and that he considers himself a Christian. But he does not argue that he sincerely holds his religious convictions, that those convictions are central to the practice of his religion, or that the challenged enactment burdens the free exercise of his religion. Thus, he has not established that the condition has a coercive effect, and his challenge on this ground fails.

5. Condition 15

DuSchene argues condition 15, which concerns dating and sexual contact,[5] violates his constitutional rights. He also argues the condition is not crime related. As addressed above, we decline to consider his claim that the condition is not crime related and disagree that the condition violates his constitutional rights.

As to his constitutional claim, DuSchene argues first that condition 15's requirement that he disclose his sex offender status prior to any sexual contact violates his First Amendment rights by compelling speech. The First Amendment of the United States Constitution protects "both the right to speak freely and the right to refrain from speaking at all." State v. K.H.-H., 185 Wn.2d 745, 748, 374 P.3d 1141 (2016) (citing Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977)). Community custody conditions that restrict free speech

---

[5] Condition 15 states, in full:

Do not date women nor form relationships with families who have minor children, as directed by the supervising Community Corrections Officer. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider/Community Corrections Officer approves of such.

rights must be reasonably necessary and sensitively imposed. Bahl, 164 Wn.2d at 757. DuSchene gained access to his minor victims via his wife. A future partner could, like DuSchene's wife, have access to young children, and disclosing his sex offender status protects those children. In light of the compelling need to prevent harm to these children, the sentencing court sensitively imposed a reasonably necessary disclosure requirement. See In re Pers. Restraint of Waggy, 111 Wn. App. 511, 517, 45 P.3d 1103 (2002) ("[P]reventing harm to minor children by a convicted sex offender is a compelling state interest that justifies limitations on the offender's freedoms"). This claim fails.

In a second constitutional claim, DuSchene argues that condition 15's requirement that he obtain prior approval from his CCO before dating women, forming relationships with families with children, or engaging in sexual contact in a relationship infringes on his due process right to privacy as well as his First Amendment right to free association. In Peters, Division III of this court rejected a similar claim, holding that the "delegation of authority to a CCO to approve dating relationships is not manifest constitutional error nor is it illegal or erroneous as a matter of law." 10 Wn. App. 2d at 591. We adhere to Peters and reject DuSchene's claim.

C. Legal Financial Obligations

DuSchene argues the trial court erred in including an interest accrual provision for the legal financial obligations in his Judgment and Sentence. The State concedes error on this issue. Interest cannot accrue on nonrestitution

18

portions of legal financial obligations. State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

We remand to strike the interest accrual provision from DuSchene's Judgment and Sentence, but affirm his sentence and the community custody conditions.

_Chun, J._

WE CONCUR:

_Mann, C.J._

_Appelwick, J._