**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 2 2015
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on July 2, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 89965-7 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| MICHAEL SHANE CATES, | ) | |
| | ) | |
| Petitioner. | ) | Filed: JUL 0 2 2015 |
| | ) | |

YU, J.—One of the community custody conditions imposed as part of Michael Shane Cates' sentence provides that upon release from total confinement, he must consent to home visits to monitor his compliance with other community custody provisions. Cates argues this condition violates article I, section 7 of the Washington Constitution. We affirm the Court of Appeals' holding that his challenge is not yet ripe for review.

## FACTUAL AND PROCEDURAL HISTORY

Following a jury trial, Cates was convicted of two counts of first degree rape of a child and two counts of first degree child molestation. He was given a standard-range sentence for each conviction, all to run concurrently, resulting in 25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

years of total confinement. He was further sentenced to 3 years of community custody upon his release and prohibited from contacting the victim.

The prosecutor proposed a community custody condition that would have prohibited Cates from possessing or maintaining access to a computer without explicit authorization from his community corrections officer (CCO). Clerk's Papers (CP) at 18; 5 Verbatim Report of Proceedings (Apr. 24, 2012) (VRP) at 615. The trial court noted "that the computer certainly can be used in terms of contacting victims" but was "concern[ed]" because there was "no evidence to support any conclusion" that Cates would do so. 5 VRP at 615. Therefore, instead of the prosecutor's recommended condition, the trial court entered a modified condition providing, "You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to." CP at 18; *see* 5 VRP at 615-16. The court orally stated that

> he will have to allow his CCO to have access to any computer used by
> him, and if he has found -- if there is any evidence that he is using it
> for improper purposes contacting children or accessing sexually
> explicit information or materials that he's already prohibited from,
> then he will be prohibited from using it. I will indicate that he can use
> a computer so long as it is subject to a search on request by his CCO,
> and if there is evidence that he's committing any violation by use of
> the computer, he will lose this right.

2

5 VRP at 615. This language was not incorporated into the written judgment and sentence, either explicitly or by reference.

The Court of Appeals affirmed Cates' convictions and sentence in an unpublished opinion. *State v. Cates*, noted at 179 Wn. App. 1002 (2014). Cates sought this court's review only as to the validity of the community custody provision requiring him to consent to home visits.

ISSUE

Is Cates' challenge ripe for review on its merits?

ANALYSIS

Several years ago, a unanimous opinion of this court clarified the analysis for determining whether a preenforcement challenge to a community custody condition is ripe for review on its merits. *State v. Sanchez Valencia*, 169 Wn.2d 782, 786-91, 239 P.3d 1059 (2010). It is ripe "'"if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."'" *Id.* at 786 (quoting *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (quoting *First United Methodist Church of Seattle v. Hr'g Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996))). Furthermore, "we must consider the hardship to the petitioner[ ] if we refused to review [the] challenge on direct appeal." *Id.* at 789. It is undisputed that the community custody condition is a final action and Cates' challenge raises primarily legal issues. We thus consider

3

only whether further factual development is required and the risk of hardship to Cates if we decline to address the merits of his challenge at this time.

Cates contends that no further factual development is required because he is bringing a facial constitutional challenge: "Did the Court of Appeals err in affirming a community custody condition that requires Mr. Cates to 'consent' to searches by his CCO, merely upon the CCO's request, without specifying that the search must be based on reasonable cause?" Pet. for Review at 1. Cates' challenge has no basis in the language of the condition actually imposed. The condition as written does not authorize any searches, and whether inspecting Cates' residence or computer, the State's authority is limited to that needed "to monitor [Cates'] compliance with supervision."[1] CP at 18. Any oral statement by the trial court indicating otherwise has no legally binding effect and cannot form the basis for a facial challenge. *See State v. Friedlund*, 182 Wn.2d 388, 394-95, 341 P.3d 280 (2015); *Sanchez Valencia*, 169 Wn.2d at 789 (considering a facial vagueness challenge to "the condition as written"). Some future misapplication of the community custody condition might violate article I, section 7, but that "depends on the particular circumstances of the attempted enforcement." *Sanchez Valencia*, 169 Wn.2d at 789. Further factual development is therefore needed—the

---

[1] A CCO "may require an offender to submit to a search" but only "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence." RCW 9.94A.631(1). That is a statutory provision distinct from the community custody condition here.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

State must attempt to enforce the condition by requesting and conducting a home visit after Cates is released from total confinement.

Moreover, unlike the conditions considered in *Sanchez Valencia*, *Bahl*, and *United States v. Loy*, 237 F.3d 251, 253 (3d Cir. 2001), the risk of hardship here is insufficient to justify review of Cates' challenge before it is factually developed. In those cases, the conditions at issue prohibited possession of crime-related items and "immediately restrict[ed] the petitioners' conduct upon their release from prison." *Sanchez Valencia*, 169 Wn.2d at 791. Compliance with those conditions required the petitioners to immediately dispose of such items upon their release and to refrain from obtaining new ones. Compliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit. Cates will not "suffer significant risk of hardship" if we decline to review the merits at this time. *Id.* at 790 (citing *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996)).[2]

## CONCLUSION

Under the guidelines set forth in *Sanchez Valencia*, we affirm the Court of Appeals' holding that Cates' preenforcement challenge is not yet ripe. Further

---

[2]*Massey* incorrectly stated that a defendant challenging a community custody condition *must* suffer actual harm before his or her claim is ripe. *Jafar v. Webb*, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013). Nevertheless, *Massey* "properly determined" that the defendant's challenge (which was similar to the one Cates raises here) was not ripe. *Sanchez Valencia*, 169 Wn.2d at 790.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

factual development is needed, and Cates does not face a significant risk of

hardship by our declining to review the merits in the absence of developed facts.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Lyn, K

WE CONCUR:

Madsen, C.J.                          Stephen, J

González, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89965-7

FAIRHURST, J. (dissenting)—I dissent because Michael Shane Cates' facial challenge to his community custody provision is ripe for review and because the computer inspection component of the community custody condition authorizing unrestricted access to Cates' personal computer by his community corrections officer (CCO) violates article I, section 7 of the Washington Constitution.[1]

Following his convictions for two counts of first degree rape and two counts of first degree child molestation, the court imposed a community custody condition that requires, "You must consent to DOC [(Department of Corrections)] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to." Clerk's Papers (CP) at 18. The court explained that

> [Cates] will have to allow his CCO to have access to any computer used
> by him, and . . . if there is any evidence that he is using it for improper
> purposes contacting children or accessing sexually explicit information
> or materials that he's already prohibited from, then he will be prohibited
> from using it. I will indicate that he can use a computer so long as it is
> subject to a search on request by his CCO, and if there is evidence that

---

[1] I would hold that the community custody condition permitting Cates' CCO to conduct home visits and visual inspection of Cates' residence does not constitute prohibited governmental intrusion into his private affairs under article I, section 7.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

he's committing any violation by use of the computer, he will lose this right.

5 Verbatim Record of Proceedings (Apr. 24, 2012) (VRP) at 615.

On appeal, Cates argued that the community custody condition violated article I, section 7 and the Fourth Amendment to the United States Constitution because it permitted Cates' CCO to conduct a search without reasonable cause in violation of RCW 9.94A.631.[2] Cates also challenged the condition's computer inspection component[3] on statutory grounds, arguing that the component violated RCW 9.94A.703[4] because it was a noncrime related prohibition. Additionally, Cates argued that the computer inspection component was unconstitutionally overbroad under the First Amendment because it chilled his right to use a computer to store his "'records, reflections, and conversations.'" Appellant's Opening Br. at 28 (quoting *State v. Nordlund*, 113 Wn. App. 171, 181-82, 53 P.3d 520 (2002)).

The Court of Appeals declined to address Cates' challenge to the community custody condition because it found that Cates' challenge was not ripe for review

---

[2]Former RCW 9.94A.195 (1984) was recodified as RCW 9.94A.631 in 2001 and provided, in relevant part, that "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, an offender may be required to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."

[3]I use the phrase "computer inspection component" to refer to the language "to also include computers which you have access to" in the community custody condition. CP at 18.

[4]RCW 9.94A.703(3) provides, in relevant part, that "[a]s part of any term of community custody, the court may order an offender to . . . (f) [c]omply with any crime-related prohibitions."

*State v. Cates*, No. 89965-7
Fairhurst, J. (dissenting)

unless and until the State subjected Cates to an improper search. *State v. Cates*, noted at 179 Wn. App. 1002, 2014 WL 231550, at *5. Cates appealed, asserting the community custody condition is unconstitutionally vague on its face.[5]

The majority's holding, affirming the Court of Appeals, that the condition will not be ripe until the State attempts to enforce the condition by conducting a home visit deviates from our precedent regarding preenforcement challenges to community custody provisions.

*The community custody condition is ripe for review*

To determine whether a preenforcement challenge to a community custody condition is ripe for review, we must find that "'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010) (internal quotation marks omitted) (quoting *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008)).[6] As part of the ripeness analysis we also consider "'the hardship to the parties of withholding court consideration.'" *Id.* (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 751).

---

[5]"[Cates] is challenging the constitutionality of the condition of community custody that requires him to 'consent' to random, suspicionless searches or face arrest and jail." Suppl. Br. of Pet'r at 16. Cates is not challenging the constitutionality or legality of a particular search. *Id.*

[6]*Sanchez Valencia* provides the appropriate test for determining whether a preenforcement challenge to a community custody provision is ripe for review.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In *Sanchez Valencia*, we found the defendants' preenforcement challenge to their community custody conditions ripe for review. *Id.* at 786-91. We reasoned that their challenge did not require further factual development because the question presented was "not fact dependent; either the condition as written provides constitutional notice and protection against arbitrary enforcement or it does not." *Id.* at 789.

The Court of Appeals, relying on *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996), stated that "[t]he unconstitutionality of a community custody condition is not ripe for review unless the person is harmfully affected by the part of the condition alleged to be unconstitutional." *Cates*, 2014 WL 231550, at *5. In *Jafar v. Webb*, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013), we specifically rejected the *Massey* "harmful effect" requirement, finding instead that "[c]*urrent* hardship is not a strict requirement for ripeness." *Id.* at 525 (emphasis added).

The *Massey* court appears to have conflated the justiciability requirements of ripeness and standing. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). In contrast, ripeness seeks to prevent courts from resolving "possible, dormant, hypothetical, speculative, or moot disagreement[s]," or entertaining disputes that are

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

merely "potential, theoretical, abstract or academic," by ensuring that the controversy has sufficiently developed to become suitable for judicial determination; "otherwise the court steps into the prohibited area of advisory opinions." *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

We have repeatedly held that "[a] litigant does not have *standing* to challenge a statute on constitutional grounds unless the litigant is harmed by the particular feature of the statute which is claimed to be unconstitutional." *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992) (emphasis added); *see also, e.g., Bitts, Inc. v. City of Seattle*, 86 Wn.2d 395, 397, 544 P.2d 1242 (1976) ("One who is not adversely affected by a provision of a statute or ordinance has no standing to challenge the validity."); *State v. McCarter*, 91 Wn.2d 249, 253, 588 P.2d 745 (1978) (finding that "petitioner lacked standing to attack the constitutionality of the statute" because "[o]ne cannot urge the invalidity of a statute unless harmed by the particular feature which is challenged"), *overruled on other grounds by In re Det. of McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984). The State has not challenged Cates' standing to raise his claims, and we have stated unequivocally that "a criminal defendant *always* has standing to challenge his or her sentence on grounds of illegality." *Bahl*, 164 Wn.2d at 750 (emphasis added).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I find that the Court of Appeals misplaced its reliance on *Massey* to resolve the ripeness inquiry. The majority agrees that *Massey* incorrectly found that a defendant challenging a community custody condition must suffer actual harm before his or her claim is ripe. Majority at 5 n.1. However, the majority relies on the court's reasoning in *Massey* to find that Cates' claim is not ripe and states that *Massey* was ultimately decided correctly. *See* majority at 5. I find it important to reject the language and test used in *Massey* and to proceed under the proper *Sanchez Valencia* ripeness test.

*Cates' challenge does not require further factual development*

The State concedes and the majority agrees that Cates' challenge is primarily legal and that the challenged action is final. However, the State argues and the majority holds that Cates' claims will not ripen until the State takes additional action because reasonable cause is a legal conclusion that depends on the specific factual circumstances of a search and because Cates has not yet been subject to a search, his claims therefore require further factual development. Majority at 4. I disagree.

Cates' challenge does not require further factual development. Cates has not challenged the legality of a particular search; rather, Cates contends that his community custody computer condition, as written, violates distinct constitutional provisions. The community custody condition requires Cates to consent to DOC's

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

inspection of his computer. Cates asserts that the community custody condition is unconstitutionally vague. In contrast to the majority's assertion that Cates' challenge rests on some future misapplication of the condition, whether the condition is valid or violates the constitution is purely a question of law. The State need not conduct an allegedly illegal search for us to determine whether the community custody condition itself violates the constitutional provisions on which Cates relies. Such factual development would be irrelevant to the legal question.

I also find that the condition imposes a hardship on Cates that counsels in favor of our review. In *Bahl*, we found Bahl's preenforcement challenge to his community custody condition ripe for review. 164 Wn.2d at 747-52. There, the State argued that the conditions imposed no immediate hardship on Bahl because Bahl was still in prison and the conditions did not yet apply to him. *Id.* at 751. We rejected that argument. We noted that the conditions would immediately restrict Bahl upon his release and that nothing could change before Bahl's release that would affect our analysis of the legal question presented. *Id.* at 751-52.

In *Bahl*, we cited with approval the Third Circuit's reasoning in *United States v. Loy*, 237 F.3d 251, 257 (3d Cir. 2001), that "the fact that a party may be forced to alter his behavior so as to avoid penalties under a potentially illegal regulation is, in itself, a hardship." The *Loy* court reasoned that a criminal defendant need not

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"'expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'" *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)).

The majority asserts that Cates' community custody condition is different from the conditions imposed on the defendants in *Bahl*, *Sanchez Valencia*, and *Loy*. In those cases, compliance with the conditions required the petitioners to immediately remove certain items from their residence. *See Bahl*, 164 Wn.2d at 743; *Sanchez Valencia*, 169 Wn.2d at 785; *Loy*, 237 F.3d at 253, 255. The condition here requires Cates to consent to DOC inspecting his computer. According to the majority, because Cates' condition does not immediately require him to do something or to refrain from doing something, it does not impose a significant hardship. Majority at 5.

However, the *Bahl* reasoning applies here. According to the community custody condition, Cates must consent to visual inspections of his computer by a CCO.[7] The community custody condition will immediately constrain Cates the moment he is released; the fact that he may be forced to alter his behavior to avoid

_____

[7]The Court of Appeals has noted that the personal computer is a "'modern day repository of a man's records, reflections, and conversations.'" *Nordlund*, 113 Wn. App. at 181-82 (quoting court record at 200). Because the computer contains such personal and private information, the court in *Nordlund* noted that the search of a computer implicates both the First and Fourth Amendments. *Id.* at 182.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

violating that condition itself indicates a hardship. Even if the hardship imposed by Cates' condition is not as significant as those in *Bahl*, *Sanchez Valencia*, and *Loy*, this does not mean that we must decline review of the community custody computer condition. The hardship imposed by withholding consideration must be considered. *See Sanchez Valencia*, 169 Wn.2d at 786.

The majority asserts that Cates' challenge has "no basis in the language of the condition actually imposed" because the community custody condition, as written, does not authorize a search. Majority at 4. The majority opines that the State's authority to inspect Cates' computer is limited to that needed "'to monitor [Cates'] compliance with supervision.'" *Id.* (alteration in original) (quoting CP at 18). However, as written, the terms of the condition allow for a search without reasonable cause. The condition allows the CCO to have access to Cates' computer for visual inspection to monitor Cates' compliance with supervision. Given the amount of personal and private information that can be stored on a computer and the ambiguity regarding what constitutes "access" for visual inspection of a computer, the condition may allow unconstitutional searches. Because I find Cates' challenge ripe for review, I would proceed to the merits of Cates' claim.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*The computer inspection component of the community custody condition is unconstitutional*

The Washington Constitution protects against illegal searches in article I, section 7, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Our court recognizes that the protections in article I, section 7 are "grounded in a broad right to privacy and the need for legal authorization in order to disturb that right," *State v. Chacon Arreola*, 176 Wn.2d 284, 291, 290 P.3d 983 (2012), and that "a person's home is a highly private place," *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994).

In this context, where Cates facially challenges his community custody condition, rather than the propriety of a specific governmental action, we must determine whether the condition facially authorizes an impermissible search. Whether or not a governmental action constitutes an impermissible search requires a two-part analysis. First, we ask whether the government has disturbed one's private affairs; second, if, and only if, there has been such a disturbance, we ask whether that disturbance was authorized by law. *State v. Puapuaga*, 164 Wn.2d 515, 522, 192 P.3d 360 (2008).

The private affairs inquiry protects only those privacy interests that Washington citizens have held, and should be entitled to hold, safe from governmental trespass absent a warrant. *Id.* We do not consider the subjective

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Cates*, No. 89965-7
Fairhurst, J. (dissenting)

privacy expectations of the individual in question because such expectations do not illuminate those privacy interests that the citizens of this state have held or should be entitled to hold. *Id.* Instead, we examine the historical treatment of the asserted interest, analogous case law, and statutes and laws supporting the claimed interest. *State v. Athan*, 160 Wn.2d 354, 366, 158 P.3d 27 (2007).

At oral argument, the State asserted that the computer inspection component permitted a CCO literally only to visually inspect Cates' computer. Wash. Supreme Court oral argument, *State v. Cates*, No. 89965-7 (Sept. 30, 2014), at 19:50 to 25:20, *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw/org. The State argued that a CCO could look at the computer, perceive whatever content may be displayed on the monitor, and observe any notes that may be near or attached to the computer. *Id.* The State did not argue that the component permitted a CCO to actively inspect the digital contents and files stored on the computer.

I disagree with the State's characterization. The trial court clarified the meaning of the computer inspection component by saying that it gave Cates' CCO "*access* to any computer used by [Cates], and . . . that [Cates] can use a computer so long as it is subject to a *search* on request by his CCO." 5 VRP at 615 (emphasis added). The court explained that the search was meant to allow the CCO to look for

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

evidence to determine whether Cates was using the computer to contact children or access sexually explicit materials. *Id.*

The court's comments clearly indicate that it intended the computer inspection component to permit Cates' CCO to search Cates' computer. I am not persuaded that a search of a computer means merely beholding its presence; rather, a search of a computer means scrutinizing the digital contents stored on the computer. Similarly, in this context "access" means "freedom or ability to obtain or make use of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (2002). One does not make use of a computer by simply eyeing the physical frame. One most naturally makes use of a computer by examining its digital contents.

I also find the State's characterization unavailing because we would render the computer inspection component superfluous if we imbued it with the meaning assigned by the State. The inspection that it purports to permit would already be permitted by the home visit component pursuant to the plain view doctrine. I therefore find that the computer inspection component facially authorizes Cates' CCO to inspect the contents of Cates' computer.

I must now determine whether that inspection constitutes a disturbance of Cates' private affairs. In *State v. Miles*, 160 Wn.2d 236, 156 P.3d 864 (2007), we held that a citizen's bank records fall under the private affairs umbrella due, in part,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to the type of information they may contain. We considered that "[p]rivate bank records may disclose what the citizen buys, how often, and from whom. They can disclose what political, recreational, and religious organizations a citizen supports. They potentially disclose where the citizen travels, their affiliations, reading materials, television viewing habits, financial condition, and more." *Id.* at 246-47.

Similarly, in *State v. Hinton*, we found that the contents of a person's text messages constitute private affairs. 179 Wn.2d 862, 869-70, 319 P.3d 9 (2014). We reasoned that text messages expose "'a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.' Text messages can encompass the same intimate subjects as phone calls, sealed letters, and other traditional forms of communication that have historically been strongly protected under Washington law." *Id.* (alteration in original) (citation omitted) (quoting *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)).

A computer raises, to an even greater degree, the same concerns that we considered in *Miles* and *Hinton*. Not only does a computer contain the same type of information that a bank record may reveal, but in our increasingly paperless world a computer likely contains an individual's actual bank records. A computer may also contain a person's e-mail correspondence, which implicate the same intimate

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

subjects encompassed by one's text messages—and probably more. It is not a stretch to say that as "'the modern day repository of a man's records, reflections, and conversations,'" *Nordlund*, 113 Wn. App at 181-82 (internal quotation marks omitted) (quoting court record at 200), the contents of a computer expose "a 'wealth of detail about [a person's] familial, political, professional, religious, and sexual associations,'" *Hinton*, 179 Wn.2d at 869 (alteration in original) (quoting *Jones*, 132 S. Ct. at 955).

The computer inspection component in Cates' community custody condition protects none of this information. On its face, the computer inspection component does not limit the scope of the inspection. Instead, it purports to authorize unfettered access to all of the contents on Cates' computer. While some of the information on Cates' computer may be relevant to his compliance with his community custody conditions, much of it is not. The computer inspection component does nothing to protect this unrelated information.

I realize that one's home, in general, may enjoy greater privacy protection than even one's personal property and that an offender on community custody enjoys substantially reduced privacy interests in both. However, it is not correct that such an offender enjoys no privacy protections at all. Cates' community custody condition does not violate his private affairs by authorizing a visual inspection of his

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

home because the condition appropriately limits the scope of that inspection only to the extent necessary to monitor his compliance with the terms of his sentence. In contrast, the computer inspection component attempts to allow Cates' CCO access not only to information that may help monitor Cates' compliance with the terms of his sentence, but also to highly private information entirely unrelated to Cates' term of community custody. I therefore would find that the computer inspection component facially authorizes an intrusion into Cates' private affairs.

I also would find that this intrusion is not authorized by law. Normally, the State may obtain authority of law from a valid search warrant. *Hinton*, 179 Wn.2d at 868. A Washington court's authority to issue a search warrant must derive from specific statutory authorizations or court rules. *City of Seattle v. McCready*, 123 Wn.2d 260, 274, 868 P.2d 134 (1994). Statutory authorization means a statute that authorizes a court to issue a warrant—a statute may not simply dispense with the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 352 n.3, 979 P.2d 833 (1999). In the absence of a warrant, the State must show that the intrusion "falls within one of the jealously guarded and carefully drawn exceptions to the warrant requirement." *Hinton*, 179 Wn.2d at 869.

The trial court did not have statutory authority to impose the computer inspection component on Cates. As we have stated, under the statutory scheme a

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court may impose community custody conditions that in other circumstances might qualify as a search—without any cause requirement—so long as the court limits those procedures to the extent necessary to monitor the offender's compliance with the terms of his sentence. But a court may not require an offender to accept an unrestricted incursion into his private affairs, entirely divorced from the legitimate demands of the community custody process, as the trial court did here. I can find no statute authorizing a warrantless search of an offender on community custody without restriction. A warrantless search of such an offender is permissible only if the offender's CCO can at least show reasonable cause to believe the offender has violated his community custody conditions.

The computer inspection component plainly permits a search of Cates' computer without the reasonable cause required by RCW 9.94A.631. The condition states that the computer inspections shall be included in the visual inspections permitted during the CCO's home visits.[8] The computer inspections necessarily constitute a search. By including the computer inspection component—which necessarily requires at least reasonable cause—within an otherwise appropriate monitoring condition, the condition facially authorizes a search of Cates' computer

---

[8]As noted, I agree the home visits do not violate article I, section 7 because they qualify as an appropriate monitoring condition, which means that a CCO does not need any degree of cause to carry them out.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

without any requisite suspicion that Cates has violated the terms of his community custody. I find support for my reading of the condition in the statement from the trial court that the component permits Cates to use a computer "so long as it is subject to a search *on request by his CCO*." 5 VRP at 615 (emphasis added). The court's statement does not indicate that it envisioned any degree of cause being necessary for that search. The trial court may not authorize an otherwise baseless search of an offender's private affairs.

While the computer community custody condition purports to provide Cates' consent, this language does not establish consent in a constitutional sense. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004). One gives consent to a search when (1) that person gives such consent voluntarily, (2) that person has authority to grant such consent, and (3) the search does not exceed the scope of the consent. *Id.* We require consent to be both meaningful and informed. *State v. Schultz*, 170 Wn.2d 746, 754, 248 P.3d 484 (2011).

Cates' consent, if any, could arise only from the fact that he signed his judgment and sentence. But I do not find this consent meaningful. Cates must consent to the search of his computer or face the possibility of having his community custody revoked and being returned to prison. And this consent was imposed on

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Cates by the trial court as a condition of his community custody—such consent is not voluntary.

Because the computer inspection component in Cates' community custody condition purports to allow an intrusion into Cates' private affairs without authority of law, I would hold that the computer inspection component facially violates the protections in article I, section 7. I would invalidate the computer inspection component on that basis.

Cates' challenge to the computer inspection of his community custody provision is ripe for this court's consideration. We need not require Cates to suffer the potential consequences of the condition to challenge its constitutional validity. The State concedes that the issues are primarily legal and that the challenged action is final. Cates' challenge satisfies the third requirement of ripeness because it does not require further factual development. Ripeness does not require a current hardship, and nothing will change prior to Cates' release that will alter the analysis of whether the community custody condition, on its face, allows unconstitutional searches. Therefore, I would reverse the Court of Appeals, reach the merits of Cates' challenge, and hold that the computer inspection component of the community custody condition is unconstitutional.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Cates*, No. 89965-7
Fairhurst, J. (dissenting)

Fairhurst, J.

Gordon McCloud, J.

Wiggins, J.