IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86045-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOHN PATRICK CURRAN, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — John Patrick Curran was charged with rape of a child in the third degree with an aggravating factor of abuse of a position of trust to facilitate the crime and molestation of a child in the third degree. The parties entered into an agreement in which Curran stipulated to a bench trial on agreed documentary evidence and the State agreed to recommend a low-end sentence. The agreement provided that if Curran committed any new crimes prior to sentencing, the State could increase its sentencing recommendation. Before sentencing, Curran was charged with murder in the second degree. The State requested that the court make a judicial finding that Curran had committed a new crime. After a hearing, the court made the requested finding, and the State changed its sentencing recommendation. The court sentenced Curran to 60 months of confinement for count 1 and 15 months for count 2. The court also imposed a community custody condition requiring Curran to consent to visual inspections of his residence. We conclude the court did not violate Curran's due process rights

by finding he had committed a new crime and allowing the State to change its sentencing recommendation. We also conclude that his challenge to the community custody condition is not ripe. We therefore affirm the conviction and sentence.

## FACTS

In August 2021, John Curran was charged with rape of a child in the third degree with an aggravating factor of abuse of a position of trust to facilitate the crime. On May 18, 2023, the State filed an amended information that added a second count for molestation of a child in the third degree. Also, in May 2023, Curran stipulated to a bench trial based on agreed documentary evidence that included the affidavit of probable cause and Curran's written factual account admitting his guilt. Based on Curran's offender score, the standard range sentence was 26 to 34 months for count 1 and 13 to 17 months for count 2. In exchange for Curran's stipulation, the State recommended a low-end sentence of 26 months for count 1 and 13 months for count 2, to be served concurrently, and 36 months of community custody.

The stipulation agreement explained the consequences if Curran violated the agreement:

> The Defendant is bound by this agreement and may not withdraw [it] in the event [the defendant] violates the provisions of this agreement. If the defendant fails to appear for stipulated bench trial, sentencing, commits a new offense or violates any condition of release prior to sentencing, or violates any other provision of this agreement, the State may recommend a more severe sentence. . . .

The agreement also provided that if Curran were "convicted of any additional crimes between now and the time [he was] sentenced, [he was] obligated to tell the sentencing judge about those convictions." Further, it provided that if he were "convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase." The agreement explained that the sentencing court was not required to accept either party's sentencing recommendation but was required to impose a sentence within the standard range unless it found "substantial and compelling reasons" to impose an exceptional sentence.

At the stipulation hearing, the trial court explicitly asked Curran if he understood that a conviction of new crimes prior to sentencing could potentially change the standard range and the State's recommendation, and he responded that he did. The court found that Curran knowingly, intelligently and voluntarily waived his rights and agreed to a bench trial on the agreed evidence. The court then set a hearing to conduct formal fact-finding and sentencing.

On October 13, 2023, the State filed unrelated charges of murder in the second degree against Curran for allegedly causing the death of his then-girlfriend on September 29, 2023. On November 13, the State filed a notice of intent to seek a judicial finding that Curran committed a new crime, and thus failed to comply with a condition precedent to the State's obligations under the agreement, so the State could make a new sentencing recommendation. Curran filed a responsive brief.

3

On November 21, 2023, the court held the fact-finding hearing and found Curran guilty of both counts, rape of a child in the third degree by abusing a position of trust and molestation of a child in the third degree. The court then addressed the State's motion for a judicial finding that Curran committed a new crime. Curran objected, stating that due process required "testimony, the right to confront witnesses, [and] the opportunity to present evidence." The trial court responded, "It is true that during a proceeding short of a criminal trial the defendant does have a due process right to have a hearing if the State alleges a breach of the plea agreement, and that is an evidentiary hearing," and that Curran was entitled "to be heard at a meaningful time and in a meaningful manner." Then, the trial court explained that that the present hearing was an evidentiary hearing on the matter and that "this is [Curran's] opportunity to present that evidence."

The State submitted several exhibits relating to the murder charge, including the order issuing a warrant, the information and the certification for probable cause, and Curran's conditions of release. Curran rested on his briefing and his prior objections to the format of the hearing and argued that the State's evidence did not meet the preponderance standard. However, he did not present evidence or witnesses. The court made an oral finding that "the State has met its burden by a preponderance of evidence based on the submitted exhibits that [Curran] had committed a new criminal offense prior to sentencing."

Upon entering this finding, the court proceeded to the sentencing portion of the bench trial. The State recommended an exceptional sentence of 60

4

months for count 1 and a standard range sentence of 15 months for count 2, to be served concurrently. Curran recommended a total of 26 months confinement for count 1 and count 2, to be served concurrently. The court imposed an exceptional sentence of 60 months for count 1 and 17 months for count 2, to be served concurrently. The court also imposed various community custody conditions, including condition 11, which required Curran to consent to Department of Corrections (DOC) home visits to monitor compliance with supervision. Curran timely appealed.

## ANALYSIS

Curran challenges the trial court's finding that he committed a new crime in breach of his stipulation agreement, thereby allowing the State to increase its sentencing recommendation. He also challenges the trial court's imposition of community custody condition 11.

### I. Breach of Stipulation Agreement

On appeal, Curran challenges the court's finding that he "was convicted of a new offense" that constituted a breach of his stipulation agreement. He claims he was not afforded due process at the judicial finding hearing and the State failed to meet its burden of proving he breached the stipulation agreement.

In this context, a stipulation is an agreement between parties that requires mutual assent. State v. Parra, 122 Wn.2d 590, 601, 859 P.2d 1231 (1993). In general, when a defendant agrees to a bench trial on stipulated facts, the State must nevertheless prove guilt beyond a reasonable doubt and the trial court must still determine guilt or innocence, but it is effectively an agreement "that what the

State presents is what the witnesses would say." State v. Johnson, 104 Wn.2d 338, 342, 705 P.2d 773 (1985).

A stipulation agreement, like a plea agreement, implicates the rights of the accused and triggers constitutional due process considerations. State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997), as amended (Jan. 28, 1998). The State must "adhere to the terms of the [stipulation] agreement." Id. However, the State is not required to perform under the agreement if the defendant breaches the agreement's terms. State v. McInally, 125 Wn. App. 854, 867, 106 P.3d 794 (2005). The State must prove a breach by a preponderance of the evidence. State v. Townsend, 2 Wn. App. 2d 434, 443, 409 P.3d 1094 (2018).[1] "Due process requires the State's proof [of defendant's breach] be presented during an evidentiary hearing, at which the defendant must have the opportunity to call witnesses and contest the State's allegations." Townsend, 2 Wn. App. 2d at 439 (citing In re Pers. Restraint of James, 96 Wn.2d 847, 850-51, 640 P.2d 18 (1982)). We review de novo a claim of violation of due process relating to an alleged breach of a stipulation agreement. See Townsend, 2 Wn. App. 2d at 439 (involving claims that court allowed State to rescind plea agreement without either holding an evidentiary hearing or obtaining a valid waiver of defendant's right to a hearing).

---

[1] The State contends that it is not arguing that Curran breached the plea agreement, but rather that he did not comply with a condition precedent. As such, it asserts that Curran has the burden of proving a breach because he is the one alleging the State breached in failing to recommend a low-end sentence. We need not resolve this issue given our conclusion on Curran's claim in the State's favor.

Curran asserts that the hearing was not consistent with due process and that because the State did not provide proof that Curran was *convicted* of a new crime, it breached the agreement when it failed to make the agreed sentencing recommendation. Both parties rely on Townsend, 2 Wn. App. 2d 434, as a key case establishing what process is required for the State to deviate from a sentencing recommendation in a stipulated plea agreement. In Townsend, pursuant to the defendant's plea agreement, the State agreed to recommend a sentence below the standard range, so long as the defendant did not commit additional law violations prior to sentencing. 2 Wn. App. 2d at 436-37. Subsequently, the defendant was arrested on felony charges and according to an affidavit of probable cause, he admitted to "at least some law violations" in a police interview. Id. at 437. The State argued that defendant's breach of the plea agreement authorized the State to rescind its low-end sentencing recommendation. Townsend, 2 Wn. App. 2d at 437. At sentencing, the defendant argued that the affidavit of probable cause was insufficient to prove his breach, but the trial court disagreed. Id. The trial court did not hear from witnesses, did not enter evidence into the record, or invite the defendant to present evidence or testify. Id. at 437-38. The reviewing court concluded that the trial court did not conduct an evidentiary hearing and that the State had not proved that the defendant waived his due process right to an evidentiary hearing. 2 Wn. App. 2d at 439-40. Because the defendant was not provided an opportunity to establish his position about the alleged violation of the plea agreement, remand was required. Id. at 443.

Here, the State argues that in contrast to <u>Townsend</u>, the trial court satisfied due process by providing an evidentiary hearing. We agree.

At the May 2023 hearing on the stipulated agreement, Curran acknowledged that he was aware of the consequences of a violation of the agreement. Through its motion for a judicial finding that Curran committed a new crime, the State provided written notice of Curran's alleged violations. After the bench trial, when the court turned its attention to the State's motion, upon Curran's objection, the court informed him that the present hearing was the evidentiary hearing, and that it constituted the parties' opportunity to present evidence regarding a violation of the plea agreement. Curran had the opportunity to challenge the State's evidence and present his own evidence. While he argued the State's evidence was insufficient to meet the preponderance standard, he did not present his own evidence or witnesses.

Thus, Curran's situation differs from that in <u>Townsend</u>, in which the court did not hear from any witnesses, no evidence was entered, and Townsend was not invited to present evidence or testimony in his defense. Here, by contrast, the court admitted into evidence the State's proffered exhibits, including the order issuing a warrant, the information and the certification for probable cause, and Curran's conditions of release. We conclude that the evidentiary hearing provided the due process to which Curran was entitled—notice and a meaningful opportunity to be heard.

Second, Curran contends that the State's evidence was inadequate to allow the trial court to make a finding that Curran committed a new offense.

Specifically, he contends that the State's reliance on the certification of probable cause was insufficient to prove that he breached the agreement and, therefore, did not comport with due process. We disagree.

To establish a defendant's violation of a plea agreement, the State need not necessarily produce proof of a criminal conviction. Townsend, 2 Wn. App. 2d at 444. Other evidence is permitted, including hearsay evidence, though if the defendant objects to hearsay, there must be a showing of good cause, including a determination of the hearsay evidence's reliability. Id.

Here, the State offered a certified copy of the order issuing a warrant for Curran's arrest, a certified copy of the information and charging documents that included a case summary and the certification of probable cause, and Curran's signed conditions of release. The trial court found that the State's exhibits constituted hearsay evidence, but that they were reliable and that there was good cause to admit them. Based on that evidence, the court found that "the State has met is burden by a preponderance of evidence based on the submitted exhibits that [Curran] had committed a new criminal offense prior to sentencing."

Curran did not challenge the court's admission of the hearsay evidence below, nor does he attempt to do so on appeal. Instead, Curran argues that the certificate of probable cause is insufficient to prove that he was *convicted* of a new crime. But the stipulated plea agreement did not require that Curran be convicted of a new crime; instead, it states that if Curran "fails to appear for stipulated bench trial, sentencing, *commits a new offense* or violates any condition of release prior to sentencing, or violates any other provision of this

9

agreement, the State may recommend a more severe sentence . . . ."[2] And the court did not find that Curran was convicted of a new crime, only that he had committed a new crime. Again, the court must find a violation of the agreement based only on a preponderance of evidence—not that the defendant has been convicted of a new crime, i.e., found guilty beyond a reasonable doubt. Here, the State offered unrebutted evidence that Curran committed a new offense of murder in the second degree. This proved by a preponderance that Curran committed a new crime in violation of the stipulation.

Curran's claims of due process violations are unavailing. The trial court's process—conducting an evidentiary hearing, admitting the State's exhibits and inviting Curran to present evidence—comported with minimal due process requirements. Further, the court did not err in relying on the State's evidence to find by a preponderance that Curran had committed a new offense, thereby freeing the State to depart from the agreed-upon sentencing recommendation.

II.    Community Custody Condition 11

Condition 11 requires Curran to "consent to DOC home visits to monitor your compliance with supervision. Home visits include access for purposes of visual inspection of all areas of the residence in which you live or have exclusive

---

[2] Similarly, in State v. Babbs, the State agreed, according to the defendant's plea agreement, to recommend a low-end sentence, but prior to sentencing, the defendant was involved in a domestic violence incident that was under investigation. No. 55423-2-II, slip op. at 1-2 (Wash. Ct. App. June 22, 2022) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2055423-2-II%20Unpublished%20Opinion.pdf. On appeal, the court concluded that although the sheriff's report was insufficient to prove the defendant was convicted of a new crime, it was sufficient proof that he violated a provision allowing the State to recommend a higher sentence if the defendant "violated the conditions of his release." Under GR 14.1(c), we may cite to unpublished decisions as necessary for a reasoned opinion, as is the case here.

or joint control and/or access." Curran contends that condition 11 is unconstitutionally overbroad in violation of article I, section 7 of the Washington Constitution and should be stricken. He further contends that his constitutional overbreadth challenge to condition 11 is ripe for review.

All persons have a protected right to privacy under both the U.S. Constitution and the Washington Constitution. U.S. CONST. amend. 14; WASH. CONST. art. I, § 7. However, a person under community supervision has a reduced expectation of privacy and can be searched by a community custody officer (CCO) when they have reasonable suspicion. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Further, a probationer may be subjected to warrantless searches of their property "where there is a nexus between the property searched and the alleged probation violation." State v. Cornwell, 190 Wn.2d 296, 306, 412 P.3d 1265 (2018).

On appeal, a defendant can challenge a community custody condition when it is ripe, meaning " 'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " State v. Bahl, 164 Wn.2d 739, 751 193 P.3d 678 (2008) (quoting First United Methodist Church v. Hr'g Exam'r, 129, Wn.2d 238, 255-56, 916 P.2d 374 (1996)). A reviewing court must also evaluate any hardship the parties may endure if the court declines to consider the claim due to ripeness. State v. Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010).

The State argues that Curran's challenge to condition 11 is not yet ripe for review because the State has not yet tried to enforce it,[3] citing State v. Cates, 183 Wn.2d 531, 535, 354 P.3d 832 (2015). Cates addressed a home visit and search condition similar to the condition Curran challenges here. Id. at 533. The Cates court acknowledged that an article I, section 7 violation was possible, but explained there was a need for additional factual development, because a claim would depend on the State's attempt to enforce the condition after the defendant's release. Cates, 183 Wn.2d at 533-35 (quoting Valencia, 169 Wn.2d at 789). Recently, the Washington Supreme Court reaffirmed Cates in State v. Nelson, where it concluded that a preenforcement challenge to a home visit condition, such as that here, is not ripe for review until the State "attempt[s] to enforce the condition before the facts would be sufficiently developed to address the defendant's challenge on its merits and determine whether the circumstances of enforcement are unreasonable." No. 102942-0, slip op. at 14-15 (Wash. Mar. 27, 2025), https://www.courts.wa.gov/opinions/pdf/1029420.pdf.

Here, the condition plainly does not "authorize any searches" and the CCO's authority to search Curran's home "is limited to that needed 'to monitor [his] compliance with supervision,' " as in Cates, 183 Wn.2d at 535. Further, a CCO has authority to visually inspect Curran's home only when they have

---

[3] Curran cites to an unpublished case, State v. Franck, in which Division Two of this court held that comparable conditions were overbroad and unconstitutional. State v. Franck, No. 51994-1-II, slip op. at 21-22 (Wash. Ct. App. Feb. 4, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051994-1-II%20Unpublished%20Opinion.pdf. However, as we noted in State v. Holmes, Franck is "not controlling, or persuasive on the issue of ripeness." 31 Wn. App. 2d 269, 293, 548 P.3d 570 (2024) (following Cates and holding preenforcement challenge to condition allowing home search was not ripe).

"reasonable suspicion" of a violation. See Winterstein, 167 Wn.2d at 628. There is additional factual development that is required, meaning the State must attempt to enforce the home inspection. Following our Supreme Court's direction in Cates and Nelson, we conclude Curran's challenge to condition 11 is not ripe for review. Curran does not face a significant risk of hardship by our declining to review the merits in the absence of additional factual development.

 Affirmed.

_Chung, J._

WE CONCUR:

_Díaz, J._

_____, ACJ