IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86456-4-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| RICHARD EDWARD SCHMIDT, | |
| Appellant. | |

SMITH, J. — Richard Schmidt challenges several conditions of community custody imposed after his convictions for one count each of child molestation in the first degree and child molestation in the second degree with a domestic violence designation. Schmidt's crimes of conviction required mandatory lifetime community custody, and the court imposed several conditions of community custody that limit his contact with minors. He now contends that these conditions violate his constitutional right to parent. He also asserts that the conditions requiring him to consent to home searches and participate in urinalysis and breath analysis testing violate his constitutional right to privacy. We conclude that the conditions limiting contact with minors do not impermissibly burden his right to parent. While the home search and testing requirements are not ripe for review at this time, the State concedes that the breath analysis requirement should be struck. Therefore, we affirm but remand to the trial court for this limited purpose.

FACTS

In 2020, the State charged Schmidt with one count of child molestation in the first degree and one count of child molestation in the second degree with a domestic violence designation. The count of child molestation in the first degree was premised on sexual contact with K.L.C., Schmidt's niece by marriage, for the charging period of May 2010 through May 2011. During the charging period, K.L.C. was between nine and ten years old, although she alleged that the abuse began when she was seven years old. The count of child molestation in the second degree arose from sexual contact with Schmidt's stepdaughter, B.M.P., during the charging period of September 2009 and September 2011 when she was between 12 and 13 years old. B.M.P. alleged that Schmidt "started to get creepy" when she was nine or ten years old.

Schmidt agreed to a bench trial on stipulated facts. The agreed documentary evidence included an admission that he committed the charged crimes, the affidavit of probable cause, and Appendix C to the signed stipulation for the bench trial. Appendix C contains reports, statements, and documents related to the investigation that detailed uncharged acts of abuse of three additional minors related to Schmidt — J.A.S. and M.L.S., who were Schmidt's nieces by marriage, and H.J.B. whose father is Schmidt's cousin and who was in the legal custody of Schmidt and his now former wife.

The trial court found Schmidt guilty as charged. The State requested a standard range indeterminate sentence of 67 months to life imprisonment for child molestation in the first degree and a standard range sentence of 31 months

2

for child molestation in the second degree. Schmidt requested a Special Sex Offender Sentencing Alternative (SSOSA) with four months in custody and a suspended sentence of 63 months.

After holding two hearings and considering two separate sexual behavior evaluations, the trial court denied the SSOSA. Instead, the court sentenced Schmidt to the standard range indeterminate sentence of 67 months to life as requested by the State. The court also imposed a lifetime term of community custody and conditions of that custody.

Schmidt appeals.

DISCUSSION

*Community Custody Conditions*

Schmidt asserts that several community custody conditions violate his constitutional rights. He claims that three conditions limiting his contact with minors infringe upon his fundamental right to parent. He also contends that the provisions requiring that he submit to home visits and inspections and that he must submit to urinalysis and breath analysis violate his right to privacy. We conclude that the limitations on his contact with minors are constitutional and the home visits and analysis requirements are not ripe for review.

Schmidt challenges the community custody conditions for the first time on appeal. Community custody conditions "may be challenged for the first time on appeal and, where the challenge involves a legal question that can be resolved on the existing record, preenforcement." *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). But because he challenges the conditions for the first

time on appeal, Schmidt "is not entitled to review unless he can show that (1) his challenge 'is ripe for review on its merits' and (2) the . . . conditions are a 'manifest error affecting a constitutional right.' " *State v. Nelson*, 4 Wn.3d 482, 493, 565 P.3d 906 (2025) (quoting *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015)); RAP 2.5(a)(3)). Once these criteria are established, we review community custody conditions for abuse of discretion. *Wallmuller*, 194 Wn.2d at 238. "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition." *Wallmuller*, 194 Wn.2d at 238. We review constitutional questions de novo. *Wallmuller*, 194 Wn.2d at 238.

   1. *Contact with Minors*

The trial court imposed several conditions of community custody that limit Schmidt's contact with minors. He claims that three of the conditions restrict contact with his children and violate his fundamental right to parent. The challenged conditions read:

> 12. Do not have contact with minor children, without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising Community Corrections Officer. Any supervisor must provide a sworn statement indicating that they have read the Affidavit of Probable Cause and the Stipulation. Specifically, the admissions to the sexual contact of minors. Defendant is allowed to have contact with biological children, in the presence of a supervisor with the same conditions as outlined above. Permitted to have letter, email, non-personal forms of contact with his biological children.
>
>      . . . .
>
> 14. Stay out of areas where children's activities regularly occur or are occurring. This includes: parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth

4

> sports, arcades, church services (where the primary recipient of the service is children), restaurants (with areas dedicated to children activities), and any specific location identified in advance by [the Department of Corrections (DOC)] or [the Community Corrections Officer (CCO)].
>
> . . . .
>
> 16. Do not remain overnight in a residence where minor children live or are spending the night.

### a. Invited Error

The State contends that Schmidt invited any error related to the limitations on his contact with minors and, therefore, waived review of any error. We disagree that Schmidt invited the court to impose the challenged condition.

The doctrine of invited error "is meant to prohibit a party from 'setting up an error at trial and then complaining of it on appeal.' " *State v. Kelly*, 4 Wn.3d 170, 194, 561 P.3d 246 (2024) (quoting *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 312, 979 P.2d 417 (1999)). Invited error "requires affirmative actions to be taken to contribute to the error." *Kelly*, 4 Wn.3d at 194-95. In assessing invited error, we consider whether a party affirmatively assented, materially contributed, or benefitted from the error. *Kelly*, 4 Wn.3d at 195. Mere failure to object to an error does not amount to invited error. *State v. Tatum*, 23 Wn. App. 2d 123, 128-29, 514 P.3d 763 (2022). The State bears the burden of proving that error was invited. *Tatum*, 23 Wn. App. 2d at 129.

The State correctly identifies that Schmidt affirmatively expressed his willingness to comply with a total prohibition on contact with minors. Schmidt informed the court, "[i]f you rule that I have no contact with minor children, I will comply." Schmidt's counsel made similar representations to the court. But

Schmidt agreed to restrict his contact with minors in the context of his request for a SSOSA. Counsel stated:

> Mr. Schmidt will do anything that the Court would order in order for him to be granted the SSOSA. You asked last time what would he do if you prevented him from having any contact with minors at all. Mr. Schmidt said: I will abide by that condition. You asked him a number of other questions about children and what would happen if he was not able to have contact with children unsupervised. Mr. Schmidt said he would abide by that condition.

Schmidt agreed to comply with significant restrictions *to secure a SSOSA*. Once the trial court denied the SSOSA, Schmidt did not renew his agreement or make any similar affirmative representations to the court. Because Schmidt only affirmatively assented to restrictions on his contact with minors for the purpose of obtaining the SSOSA, he did not invite the community custody condition imposed by the trial court as part of his standard range sentence.

### b. Constitutionality

Schmidt contends that condition 12, prohibiting personal contact with his children without approved supervision violates his right to parent his children without undue interference by the State. He also claims that condition 16 impermissibly burdens his ability to parent by prohibiting him from remaining overnight in the same residence with his children, and condition 14 prevents him from accompanying his children to community events where other children are present. We disagree.

"The rights to marriage and to the care, custody, and companionship of one's children are fundamental constitutional rights, and state interference with those rights is subject to strict scrutiny." *State v. Warren*, 165 Wn.2d 17, 34, 195

P.3d 940 (2008). The court may impose community custody conditions that interfere with a parent's fundamental right to parent if reasonably necessary to prevent harm to a child. *State v. DeLeon*, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020). Such conditions "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.' " *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *Warren*, 165 Wn.2d at 32). We will uphold conditions infringing on the right to parent if they meet these requirements. *State v. Reedy*, 26 Wn. App. 2d 379, 394, 527 P.3d 156, *review denied*, 1 Wn.3d 1029 (2023). The court must consider, on the record, whether less restrictive alternatives exist. *DeLeon*, 11 Wn. App. 2d at 841.

Schmidt claims that the court "conducted no meaningful inquiry on the record" about how the supervision requirement for personal contact with his children was reasonably necessary to protect them from harm and that no reasonable alternative existed. But the court's statements throughout the two sentencing hearings establish grave concerns about unsupervised contact with minors. After learning that Schmidt was romantically involved and expecting a baby with a woman with a four-year-old daughter, the court stated "I don't feel comfortable with the fact that you've gotten together with another person with another stepdaughter," because evaluations indicated that "the one thing that was a precursor to your offense. . . was having unsupervised contact with a minor like that." The court explained, "I'm just concerned you've put yourself in the exact same circumstances that got you to where you are today again." In

7

fact, the court cited this pattern of behavior as one of the reasons for ultimately denying the SSOSA:

> I do have some real concerns about safety in the community that the Defendant got together with another woman who has a 3-year-old daughter while the case was pending. And the reality is there seems to be no recognition by him or possibly even the treatment providers that that is one of the circumstances or triggers that led to these offenses, him living with or having children around him.
>
> It needs to not be forgotten that one of the victims here was a stepdaughter, and now he's wanting to take on another stepdaughter without yet having completed any treatment. So, I do have concerns with that situation. Although that child is 3, again, remember, one of the victims here was 7 years old. So, we're not that far off.

The court explicitly identified "living with or having children around him" as a circumstance that led to Schmidt's offenses. The supervision requirements of condition 12, as well as the prohibition on overnight stays in condition 16, are reasonably necessary and tailored to remove Schmidt from circumstances similar to his offenses.

Initially, the court had considered restricting Schmidt from any contact with minors, stating "I don't trust supervision under these circumstances, given the reading of what occurred." By permitting Schmidt to have supervised personal contact, as well as non-personal contact, with his biological children, the community custody condition allows Schmidt to parent while safeguarding his children from circumstances that could enable him to reoffend. Rather than violate Schmidt's right to parent, condition 12 balances his rights and the State's need to protect children.

8

Schmidt claims that condition 12's requirement is "overkill, given that the CCO must already approve the supervisor."[1] According to Schmidt, this requirement "adds nothing of substance while needlessly presenting a hurdle to overcome." The court deliberately changed the language of the supervision requirement:

> No. 12. You're not to initiate -- this is the one that I think we need to deal with under the case law because he has biological children. I'm going to order that you're not to have – I'm going to change the language that he's not to have contact with minor children without the presence of an adult who is knowledgeable of the offense and is approved by the CCO.
>
> I'm also going to require that any supervisor has to provide a written sworn statement that they've read the affidavit of probable cause and the stipulation on the stipulation for the trial wherein the Defendant admits he had sexual contact with each of the victims.
>
> For everyone's edification, "sexual contact" means touching the sexual or intimate parts of another person for the purposes of sexual gratification, and that's what's in that stipulation. So I want to make sure that whoever is supervising has read the affidavit and seen what the admissions are.

This additional supervision requirement addresses a serious concern cited by the trial court as one reason for denial of the SSOSA. The court found that Schmidt "[is] pretty much in total denial" of his behavior, having "essentially denied all of the relevant important sexual touching and indicated it was not for sexual gratification." Condition 12 ensures that any potential supervisor has read the admission and understands the extent of the crimes independent of any representation made by Schmidt that might be influenced by his denial. The

---

[1] Condition 12 requires that that the supervisor "provide a sworn statement indicating that they have read the Affidavit of Probable Cause and the Stipulation . . . [s]pecifically, the admissions to the sexual contact of minors."

requirement is not "overkill" but reasonably necessary to prevent harm to children.

Schmidt also asserts that "the court at no time explained why it was limited to 'biological children' " and the limit is "unnecessarily discriminatory." Specifically, Schmidt states that he has "assumed the role of stepfather" to his girlfriend's child and the court needed to consider the children he "may serve as a father" in the future. Condition 12 governs all contact with minor children. The only differentiation for biological children is that Schmidt may have letter, e-mail, and non-personal forms of contact.[2] Therefore, the condition permits Schmidt to have supervised personal contact with non-biological children that he may parent. Additionally, we note that the court explicitly expressed concern about this specific relationship and Schmidt's access to a new stepdaughter. One of the charged crimes involved Schmidt's stepdaughter and several allegations of uncharged crimes involved similar paternal relationships. The limitations are reasonably necessary to protect children he might parent.

Schmidt contends that condition 16, prohibiting overnight stays where minors are spending the night, and condition 14, requiring Schmidt to "stay out of areas where children's activities regularly occur or are occurring," also impair his ability to parent. As noted above, condition 16 prevents Schmidt from living with

---

[2] Schmidt claims that condition 12 refers to "biological children" instead of "minor biological children" and "will prohibit him from having unsupervised, in-person contact with his biological children even after they reach adulthood." He requests that the fourth sentence of the condition be modified to state "minor biological children." This change is unnecessary. Condition 12 governs contact with "minor children," and the context clearly demonstrates that the fourth sentence pertains to Schmidt's minor biological children.

children, a common circumstance for his offenses. The condition also ensures no access to children on overnights where a supervising adult could be sleeping and unable to monitor contact. Condition 16 does not impermissibly burden Schmidt's right to parent.

Condition 14 restricts Schmidt from areas where children's activities occur. According to Schmidt, this "unduly restricts [his] ability to parent his children in public places." But the record includes evidence that Schmidt engaged in his pattern of offensive behavior in public places. In one instance, Schmidt picked up J.A.S. and B.M.P. from B.M.P.'s soccer match and had his penis out of his pants when the girls entered the car. Another time, M.L.S. awoke in the car in a casino parking lot with Schmidt masturbating in the seat next to her. Given this demonstrated history of inappropriate sexual conduct in public places, including a child's soccer match, prohibiting Schmidt from visiting areas where children's activities occur is necessary for public safety.

Community custody conditions 12, 14, and 16 do not impermissibly burden Schmidt's ability to parent his biological children. The conditions allow for contact with his children but are narrowly tailored to protect his children and the community, as well as prevent Schmidt from encountering situations similar to the circumstances of his offenses. We conclude that the trial court did not abuse its discretion by imposing these community custody conditions.

2. *Home Visits*

Schmidt asserts that condition 10 violates his constitutional right to privacy by allowing for unlawful warrantless searches. Condition 10 states: "You must

11

consent to DOC home visits to monitor your compliance with supervision. Home visits include access for purposes of visual inspection of all areas of the residence in which you live or have exclusive or joint control and/or access." Schmidt's challenge to this condition is preenforcement and is not ripe for review.

A preenforcement challenge to community custody conditions is ripe for review when the issues are primarily legal, do not require further factual development, and the action is final. *Cates*, 183 Wn.2d at 534. Additionally, we consider the hardship to the petitioner if we refuse to review the condition on direct appeal. *Cates*, 183 Wn.2d at 534.

*Cates* considered the same community custody condition and concluded that the challenge was not ripe for review. 183 Wn.2d at 533. The condition does not authorize any searches, and the State's authority is limited to inspections needed to monitor compliance with supervision. *Cates*, 183 Wn.2d at 535. A future attempt to enforce the community custody condition might violate the constitutional right to privacy, but the specific factual circumstances are necessary to assess any possible misapplication of the condition. *Cates*, 183 Wn.2d at 535. "Further factual development is therefore needed—the State must attempt to enforce the condition by requesting and conducting a home visit" after release from confinement. *Cates*, 183 Wn.2d at 535. Because compliance does not require Schmidt "to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit," he would not suffer a significant risk of hardship if we decline to review the challenge preenforcement. *See*

*Cates*, 183 Wn.2d at 536. Therefore, the challenge is not ripe for review at this time.

3. *Urinalysis and Breath Analysis*

Schmidt contends that community custody condition six, requiring him to "[p]articipate in urinalysis, breathalyzer, and polygraph examinations as directed by the supervising Community Corrections Officer, to ensure conditions of community custody," violates his right to privacy. Schmidt raises this challenge preenforcement and his claim is not ripe for review. *See Nelson*, 4 Wn.3d at 496.

While we decline to consider the merits of Schmidt's challenge to the condition, the State concedes that the breath analysis requirement was not properly imposed. Breath analysis testing is authorized for the limited purpose of monitoring compliance with restrictions on alcohol consumption. *See, Nelson*, 4 Wn.3d at 507. Here, the trial court did not order Schmidt to abstain from alcohol and, as a result, random breath analysis testing is not warranted. We accept the State's concession and remand for the trial court to strike the breath analysis language from condition six.

We affirm conditions 10, 12, 14, and 16, and remand to the trial court for the limited purpose of striking the breath analysis language from condition 6.

WE CONCUR:

13