**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59267-3-II |
| Respondent, | |
| v. | |
| JEREMIAH J. JEFFRIES-PORTER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J. — Jeremiah Jeffries-Porter pleaded guilty to one count of child molestation in the first degree. He appeals and challenges eight of the community custody conditions imposed as part of his judgment and sentence. He also argues language in his judgment and sentence regarding forfeiture was a clerical error that should be stricken. The State concedes we should strike some of the challenged community custody conditions and the language regarding forfeiture.

We reverse in part and remand for the trial court to modify or strike three of the community custody conditions, consistent with the State's concessions. We affirm the remaining conditions. We also direct the court to correct the clerical error on remand.

FACTS

Jaime Khun and Jeremy Porter began having a romantic relationship in 2008. They moved in together in 2010 at a property in Olalla and lived there until 2014. Khun had two children from a previous relationship, EW and HAT. Porter had one child from a previous relationship, Jeffries-Porter. During this time frame, HAT was 4-8 years old, and Jeffries-Porter was 13-17 years old.

From 2010 until 2015, Jeffries-Porter spent most weekends with Khun, Porter, HAT, and EW. The rest of the time he spent with his mother.

In 2021, Khun called 911 and reported that HAT disclosed to her that Jeffries-Porter had sexually assaulted her several years ago and had "sexually touched her for several years." Clerk's Papers (CP) at 4. HAT said that when Jeffries-Porter would come over for weekend visits, he would "put his fingers inside of her vagina" and touch her vagina with his penis. CP at 5. HAT also described an incident where Jeffries-Porter put his penis in her mouth and used her hand to masturbate.

Jeffries-Porter was charged with one count of child molestation in the first degree. He pleaded guilty to this charge. The trial court sentenced him to 51 months of confinement and 36 months of community custody. In the judgment and sentence, the court imposed numerous community custody conditions including the following:

- Possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or [community corrections officer] CCO).
  . . . .
- Possess/access no sexually explicit materials, and/or information pertaining to minors via computer (i.e. [I]nternet)

CP at 75.

The judgment and sentence stated that, "All conditions recommended in The Pre-Sentence Investigation are incorporated herein as conditions of community custody, in addition to any conditions listed in this judgment and sentence, unless otherwise noted in appendix." CP at 75. The box next to "Forfeiture" was also checked and stated: "Forfeit all seized property subject to forfeiture under RCW 9.41.098 or RCW 69.50.505 to the originating law enforcement agency unless otherwise noted." CP at 76.

Appendix H to the judgment and sentence also imposed numerous conditions including:

> Remain within geographic boundary, as set forth in writing by the Community Corrections Officer [CCO].
>
> . . . .
>
> The defendant shall consent to allow home visits by the Department of Corrections [DOC] to monitor compliance with supervision. Home visits include access for the purpose of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint access to.
>
> . . . .
>
> The defendant shall complete an evaluation for mental health and comply with all treatment recommended by CCO and/or treatment provider.
>
> . . . .
>
> The defendant shall have no contact with minors under the age of 16 except for biological children unless prior authorization is given from the supervising CCO or a therapist. Contact w[ith] defendant's own children shall be supervised by [an] adult w[ith] knowledge of the offense.
>
> The defendant shall submit to polygraph testing at his own expense, whenever directed to by the supervising CCO, or treatment provider.

CP at 82.

The condition restricting contact with minors was originally written: "The defendant shall have no contact with minors under the age of 18 unless prior authorization is given from the supervising CCO or a therapist." CP at 82. At sentencing, Jeffries-Porter's counsel requested an exception to this condition to allow contact with his biological children. Counsel acknowledged that Jeffries-Porter did not have any biological children at the time but noted he might have children in the future. The trial court allowed an exception for the defendant's own biological children but also added the supervision requirement. Jeffries-Porter's counsel responded that she had no objection stating, "Yeah, I mean, I think that that is fine, Your Honor. It is not as much of an issue in this case as it's not lifetime community custody." Rep. of Proc. (Jan. 22, 2024) at 93.

Jeffries-Porter appeals, challenging the community custody conditions listed above, as well as the reference to forfeiture in his judgment and sentence. As of the time of this appeal, we understand Jeffries-Porter to have no biological children.

ANALYSIS

I  ALLEGED VAGUE CONDITIONS

Jeffries-Porter argues that three of his community custody conditions are unconstitutionally vague.

Conditions of community custody may be challenged for the first time on appeal and, if the challenge involves a legal question that can be resolved on the existing record, they may be challenged before enforcement. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). We review the imposition of community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). "A trial court abuses its discretion if it imposes an unconstitutional condition." *Id.* "[W]e review constitutional questions de novo." *Wallmuller*, 194 Wn.2d at 238.

A community custody condition is unconstitutionally vague under due process principles of the Fourteenth Amendment to the United States Constitution and article I, section 3, of the Washington Constitution "'if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement.'" *Id.* at 238-39 (quoting *Padilla*, 190 Wn.2d at 677). "'[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [their] actions would be classified as prohibited conduct.'" *State v. Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010) (internal quotation marks omitted) (quoting *State v. Valencia*, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009), *rev'd*, 169 Wn.2d 782, 239 P.3d 1059 (2010)).

"Sentencing courts have the power to delegate some aspects of community placement to the DOC." *State v. Sansone*, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005). While the judiciary

determines guilt and imposes sentences, "'the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body, according to the manner prescribed by the Legislature.'" *Id.* (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937)).

Sentencing courts, however, "'may not wholesaledly abdicate . . . judicial responsibility for setting the conditions of [community custody].'" *Id.* (internal quotation marks omitted) (quoting *United States v. Loy*, 237 F.3d 251, 266 (3rd Cir. 2001)). A community custody condition that is unconstitutionally vague

> "cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of basic policy matters to [community corrections officers] . . . for resolution on an ad hoc and subjective basis."

*Id*. (internal quotation marks omitted) (alterations in original) (quoting *Loy*, 237 F.3d at 266). Nevertheless, the *Sansone* court noted, for example, that a delegation may not be improper if a defendant is in treatment and the court gives a treating therapist discretion to determine what types of materials that defendant should not possess. *Id.* at 643. The court also reasoned that a therapist could change such restrictions as treatment progressed. *Id.* Thus, the *Sansone* court recognized that the contours of some community custody conditions can be delegated without constitutional violation.

A.      Geographic Boundary Restriction

Here, Jeffries-Porter argues that the community custody condition requiring that he "'[r]emain within geographic boundary, as set forth in writing by the [CCO]'" is unconstitutionally vague. Br. of Appellant at 13 (quoting CP at 82). We disagree.

The trial court here did not impose a specific geographic boundary. Instead, it clearly and unambiguously required Jeffries-Porter to comply with the condition to be set by the DOC. The legislature has required the DOC to prescribe geographic restrictions on every person subject to its supervision in the community. RCW 9.94A.704(3)(b).[1] In light of this preexisting authority, the court did not grant the CCO "unfettered power of interpretation." *Sansone*, 127 Wn. App. at 642 (quoting *Loy*, 237 F.3d at 266); *see also State v. McWilliams*, 177 Wn. App. 139, 153-54, 311 P.3d 584 (2013) (trial court's delegation of authority to define parameters of a condition created at sentencing to the DOC was not improper when the DOC was statutorily authorized to impose or modify such conditions).

The legislature specifically authorized the DOC to prescribe geographic boundaries; this delegation is administrative in nature, and supervision will be properly exercised by an administrative body, the DOC. This community custody condition contemplates that the defendant will have sufficient notice of what the geographic boundaries are and this clarity also protects against arbitrary enforcement. Accordingly, this condition is not unconstitutionally vague.

B.    Possess or Access No Sexually Exploitive Materials

Jeffries-Porter argues that the condition requiring him to "'[p]ossess/access no sexually exploitive materials (as defined by Defendant's treating therapist or CCO)'" is unconstitutionally vague. Br. of Appellant at 15 (quoting CP at 75). We disagree.

In determining if a term is unconstitutionally vague, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *State v. Bahl*, 164 Wn.2d 739, 754, 193 P.3d 678 (2008) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 180,

---

[1] We cite to the current statue. A prior version was in effect when Jeffries-Porter committed his offense, but the relevant statutory language has not changed.

795 P.2d 693 (1990)). We may consider statutory definitions, and if the term is not defined in a statute, "the court may consider the plain and ordinary meaning as set forth in a standard dictionary." *Id*. If "persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." *Douglass*, 115 Wn.2d at 179. A term is not unconstitutionally vague, even when undefined, when a person may seek clarification through statements of law in statutes and court rulings as they are presumptively available to all. *Id.* at 180. "However, a stricter standard of definiteness applies where the community custody condition prohibits material protected by the First Amendment." *State v. Nguyen*, 191 Wn.2d 671, 679, 425 P.3d 847 (2018).

The Washington Supreme Court has not addressed whether the term "sexually exploitive materials" is vague. Several unpublished decisions of this court, however, have concluded that it is not.

In *State v. Perkins*, this court held that the community custody condition requiring the defendant to "Possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or CCO)" was not unconstitutionally vague. No. 42793-1-II, slip op. at 6 (Wash. Ct. App. Dec. 20, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2042793-1-II%20%20Unpublished%20Opinion.pdf. The court relied on RCW 9.68A.040(1)(a), (b), which set out the elements of the crime of sexual exploitation of a minor. *Id.* RCW 9.68A.040(1)(a), (b) provides that

> (1) A person is guilty of sexual exploitation of a minor if the person:
> (a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; [or]
> (b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance.

The court read this statute in conjunction with the statutory definition of "sexually explicit conduct" in RCW 9.68A.011(7),[2] which provides that "sexually explicit conduct" is actual or simulated,

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse;
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer . . . ; and
> (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

*Id.*

The court reasoned that these statutes together provided sufficient notice and did "not require persons of ordinary intelligence to guess at what is meant by the condition prohibiting access to or possession of 'sexually exploitive materials.'" *Perkins*, No. 42793-1-II, slip. op. at 9. The court concluded that "[w]hile there may be areas of disagreement concerning the materials that fall within this condition, and while Perkins's therapist and CCO have some control over its scope, we hold that the reference to 'sexually exploitive materials' is not so subjective as to be constitutionally suspect." *Id.*[3]

---

[2] We cite to the current statute. A prior version was in effect when Jeffries-Porter committed his offenses, but the relevant statutory language has not changes, only the section number.

[3] Similarly, in *State v. Thompson*, No. 81044-8-I, slip op. at 10-13 (Wash. Ct. App. June 8, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/810448.pdf, and *State v. Fenney*, No. 56886-1-II, slip op. at 12-14 (Wash. Ct. App. Aug. 29, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056886-1-II%20Unpublished%20Opinion.pdf, *review denied*, 540 P.3d 779 (2024), panels of this court relied on the same reasoning to affirm identical or nearly identical conditions.

We agree that the statutory elements of the crime of sexual exploitation of a minor read in conjunction with the statutory definition of "sexually explicit conduct" are sufficient to limit the discretion of therapists and CCOs when defining the types of materials that offenders may not access under this condition. Such delegation would not allow them to have an "unfettered power of interpretation." *Sansone*, 127 Wn. App. at 642 (quoting *Loy*, 237 F.3d at 266). And nothing suggests that when therapists and CCOs define prohibited material for offenders within the confines of these statutes, the offenders will not have sufficient notice of what constitutes the prohibited sexually exploitive materials. In sum, the condition is not so subjective as to be constitutionally suspect. *See Douglass*, 115 Wn.2d at 181 (statute supplies adequate standards unless it proscribes conduct by resort to inherently subjective terms).

Accordingly, we hold that this community custody condition is not unconstitutionally vague.

C.      Possess or Access No Sexually Explicit Materials or Information Pertaining to Minors

Jeffries-Porter argues that the community custody condition requiring him to "'[p]ossess/access no sexually explicit materials, and/or information pertaining to minors via computer (i.e. [I]nternet)'" is also unconstitutionally vague and overbroad.[4] Br. of Appellant at 25, 33 (quoting CP at 75). He argues that the entire condition should be stricken. The State concedes this condition must be stricken. We accept the State's concession and remand for the trial court to strike the condition.

---

[4] Jeffries-Porter also argues that "information pertaining to minors" is not directly related to the crime. Br. of Appellant at 37. Because we strike this condition, we do not address this argument.

## II. MENTAL HEALTH EVALUATION

Jeffries-Porter argues the community custody condition requiring him to "'complete an evaluation for mental health and comply with all treatment recommended by CCO and/or treatment provider'" was erroneously imposed because the court failed to make the required statutory findings to support this condition. Br. of Appellant at 40 (quoting CP at 82).

The State acknowledges that the trial court did not make any findings sufficient to satisfy the statutory requirements of RCW 9.94B.080, which requires a finding that the defendant is "mentally ill" and that their condition influenced the offense. The State requests that the case be remanded for the trial court to make appropriate findings regarding mental health treatment or limit the condition to requiring a psychosexual evaluation.

The parties agree the trial court did not make the statutorily required findings in support of its order for a mental health examination and treatment. We agree, reverse, and remand for the trial court to make the necessary findings or strike the condition.

## III. SUBMIT TO POLYGRAPH TESTING AT DEFENDANT'S OWN EXPENSE

Jeffries-Porter challenges the community custody condition requiring him to submit to polygraph testing at his own expense because it is not statutorily authorized. The condition states: "The defendant shall submit to polygraph testing at his own expense whenever directed to by the supervising CCO, or treatment provider." CP at 82. The State concedes that the phrase "at his own expense" should be stricken from the condition. We accept the State's concession.

"Effective July 2022, RCW 9.94A.703(2) no longer authorizes the imposition of community custody supervision fees." LAWS OF 2022, ch. 29, § 7; *State v. Ellis*, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023), *review granted*, 4 Wn.3d 1009, 564 P.3d 547 (2025). Because the expense of the polygraph testing amounts to a community custody supervision fee, we remand for

the trial court to strike the portion of the condition requiring Jeffries-Porter to pay for polygraph testing.

## IV. CONSENT TO HOME VISITS

Jeffries-Porter argues the trial court erred in imposing the following condition without including a "reasonable cause" requirement:

> "The defendant shall consent to allow home visits by the [DOC] to monitor compliance with supervision. Home visits include access for the purpose of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint access to."

Br. of Appellant at 47 (quoting CP at 82). Jeffries-Porter argues that as written, the condition unconstitutionally allows searches without reasonable cause. The State argues that a pre-enforcement challenge to this condition is not ripe for review. We agree with the State.

### A.    Ripeness

To determine whether a pre-enforcement challenge to a community custody condition is ripe for review, we examine "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Valencia*, 169 Wn.2d at 786 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 751). We also consider the hardship imposed on the petitioner if the condition challenged is not reviewed on appeal. *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015).

For example, in *Cates*, the Washington Supreme Court considered whether a pre-enforcement challenge to the following condition was ripe for review:

> You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to.

11

*Id.* at 533 (alteration in original). While the court concluded that this was a final action and that Cates raised primarily legal issues, the court noted that further factual development was required, commenting, "[s]ome future misapplication of the community custody condition might violate article I, section 7, but that 'depends on the particular circumstances of the attempted enforcement.'" *Id.* at 535 (quoting *Valencia*, 169 Wn.2d at 789). The court also concluded that the risk of hardship to Cates was insufficient to justify review before the challenge was factually developed because "[c]ompliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit." *Id.* at 536. Accordingly, the court held that Cates' pre-enforcement challenge was not ripe. *Id*.

Similarly, in *State v. Nelson*, the Supreme Court analyzed whether a pre-enforcement challenge to community custody conditions requiring the defendant to submit to breathalyzer (BA) and urinalysis (UA) testing were ripe for review. ___ Wn.3d ___, 565 P.3d 906, 910-12 (2025). The court concluded that Nelson's challenge was not ripe because it required further factual development. *Id.* at 914. The court stated that Nelson's claim rested "on the factually unsupported assumption that BA and UA testing will be 'conducted in an unreasonable manner' or 'used impermissibly as part of a fishing expedition to discover evidence of other crimes.'" *Id* (internal quotation marks omitted) (quoting *State v. Olsen*, 189 Wn.2d 118, 134, 399 P.3d 1141 (2017)). Further, there was no risk of hardship to Nelson because the conditions did "not require him to do, or refrain from doing, anything upon his release, unless and until the DOC requests it." *Id.*

In reaching this conclusion, the court reiterated its holding in *Cates* and specifically referenced *Cates* as providing guidance for lower courts when determining whether pre-enforcement challenges to community custody conditions are ripe. *Id.* at 914-15.[5]

B.      Analysis

Here, Jeffries-Porter challenges a community custody condition almost identical to the one at issue in *Cates*. While we agree that this is a final action and that the challenge raises primarily legal issues, Jeffries-Porter's claim requires further factual development. Jeffries-Porter's challenge rests "on the factually unsupported assumption" that the condition will be enforced in an unreasonable way, but that depends on the "particular circumstances of the attempted enforcement." *Id.* at 913- 14 (quoting *Olsen*, 189 Wn.2d at 134; *Cates*, 183 Wn.2d at 535). Further, the risk of hardship to Jeffries-Porter is insufficient to justify review before it is factually developed because Jeffries-Porter is not required to do or refrain from doing anything upon his release until the State seeks to conduct a home visit.

Jeffries-Porter's claim, like the claim in *Cates*, requires further factual development and he will not suffer hardship if we decline to consider it before it is factually developed. We conclude that his challenge to this community custody condition is not ripe for review.

V.  CONTACT WITH BIOLOGICAL CHILDREN

Jeffries-Porter also challenges the following condition: "'The defendant shall have no contact with minors under the age of 16 except for biological children unless prior authorization is given from the supervising CCO or a therapist.  Contact w[ith] defendant's own children shall be supervised by an adult w[ith] knowledge of the offense.'" Br. of Appellant at 52 (quoting CP

---

[5] In his reply, Jeffries-Porter relies on unpublished cases from this court concluding that similar conditions were ripe for review, but in light of the Supreme Court's recent favorable discussion of *Cates*, we decline to follow those unpublished opinions.

at 82). He argues the trial court did not determine that this condition was reasonably necessary to protect any future children he might have from harm.[6] The State argues that Jeffries-Porter invited the error and that his challenge is unripe for review because he has no children.[7] We disagree with the State that there was invited error but agree that Jeffries-Porter's challenge is not ripe for review.

"The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). To determine whether the invited error doctrine applies, we consider whether the defendant "affirmatively assented to the error, materially contributed to it, or benefited from it." *Id.* at 154. For example, a defendant may not request a specific jury instruction and then, on appeal complain that the requested instruction was given. *City of Seattle v. Patu*, 147 Wn.2d 717, 721, 58 P.3d 273 (2002).

Here, while defense counsel requested that the trial court modify the community custody condition prohibiting contact with minors to include contact with his biological children, the court sua sponte added the condition that any contact with biological children be supervised. Therefore, Jeffries-Porter did not set up the error he now complains of. Further, merely acquiescing to the court's condition without more is not tantamount to "setting up" the error such that any challenge to the error is barred under the invited error doctrine. *See In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (plurality opinion) (rejecting the argument that Coggin

---

[6] Jeffries-Porter also argues that he received ineffective assistance of counsel because his counsel agreed to the condition. Because we conclude that Jeffries-Porter's challenge is not ripe for review, we do not address this argument.

[7] The State also argues Jeffries-Porter's claim is unpreserved. Because we conclude the challenge is unripe, we do not address this other argument.

invited error "by merely assenting to the State's juror questionnaire"). Accordingly, the State's argument regarding invited error fails.

We agree, however, that Jeffries-Porter's challenge is not ripe for review. As explained above, to determine whether a pre-enforcement challenge to a community custody condition is ripe for review, we examine "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Valencia*, 169 Wn.2d at 786 (internal quotation marks omitted) (quoting *Bahl*, 164 Wn.2d at 751). We also consider the hardship imposed on the petitioner if the condition challenged is not reviewed on appeal. *Cates*, 183 Wn.2d at 534.

While we agree that this challenged action is final and that the claim raises primarily legal issues, it requires further factual development because Jeffries-Porter currently has no children. Further, there is no evidence in the record that Jeffries-Porter is currently expecting a child. Any infringement on Jeffries-Porter's right to parent any future children is speculative. Moreover, Jeffries-Porter's community custody term is only 36 months long, not for life. Any hardship Jeffries-Porter might face is also insufficient to justify review because there currently exists no parent-child relationship that could be affected by the community custody condition. If Jeffries-Porter fathers a child between now and when his community custody term ends, he may seek modification of this condition through the mechanism provided by RCW 9.94A.709(2)(a).[8]

Accordingly, because Jeffries-Porter's challenge to this community custody condition requires further factual development and he will not suffer a hardship if we decline to review it before it is developed, we conclude the challenge is not ripe for review.

---

[8] RCW 9.94A.709(2)(a) provides: "On the motion of the offender, following the offender's release from total confinement, the court may amend the substantive conditions of community custody imposed by the court."

VI. PROVISION INCORPORATING CONDITIONS RECOMMENDED IN PRESENTENCE INVESTIGATION

Jeffries-Porter argues the following condition in his judgment and sentence is the result of a clerical error: "'All conditions recommended in The Pre-Sentence Investigation are incorporated herein as conditions of community custody, in addition to any conditions listed in this judgment and sentence, unless otherwise noted in appendix.'" Br. of Appellant at 66-67 (quoting CP at 75). He argues that this fails to account for changes that the trial court made in the appendix to the conditions in the presentence investigation recommendation. We disagree.

The boilerplate language of the provision incorporating the conditions recommended in the presentence investigation specifically accounts for the changes the court made in appendix H to the judgment and sentence by use of the phrase "unless otherwise noted in appendix." CP at 75. Therefore, we conclude that there is no error because the provision accounts for changes in the appendix.

VII. CLERICAL ERROR REGARDING FORFEITURE

Jeffries-Porter argues that the box next to "Forfeiture" was improperly checked and should be stricken. The State concedes that the box regarding forfeiture was checked in error and should be stricken. We accept the State's concession and direct that this error be corrected on remand.

CONCLUSION

We remand for the trial court to strike or modify the following challenged community custody conditions as directed in this opinion:

- Possess/access no sexually explicit materials, and/or information pertaining to minors via computer (i.e. Internet)
- The defendant shall complete an evaluation for mental health and comply with all treatment recommended by CCO and/or treatment provider.
- The defendant shall submit to polygraph testing at his own expense, whenever directed to by the supervising CCO, or treatment provider.

No. 59267-3-II

We otherwise affirm. We also direct the court to correct the clerical error regarding forfeiture on remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

I concur:

_____
Che, J.

VELJACIC, A.C.J. (dissent) — I agree in almost all respects with the majority opinion; I disagree only with the conclusion that the condition that Jeremiah Jeffries-Porter "possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or CCO)" is not unconstitutionally vague. Clerk's Papers (CP) at 75.

As the majority notes, if "'persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" Majority at 7 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). And a term is not unconstitutionally vague, even when undefined, when a person may seek clarification through statements of law in statutes and court rulings as they are "'presumptively available to all.'" *Douglass*, 115 Wn.2d at 180 (quoting *State v. Smith*, 111 Wn.2d 1, 7, 759 P.2d 372 (1988)). "However, a stricter standard of definiteness applies where the community custody condition prohibits material protected by the First Amendment [to the United States Constitution]." *State v. Nguyen*, 191 Wn.2d 671, 679, 425 P.3d 847 (2018).

I do not agree that a person of ordinary intelligence can understand what the particular condition here proscribes. I also do not agree that one may find clarification through statements of the law because the statements of the law relied on by the majority and identified in this court's previous opinions, are from two statutes, only one of which actually uses the term "exploitation." *See* RCW 9.68A.040(1). Even then, the term "exploitation" references "sexual exploitation of a minor." *Id.* The condition here prohibits "sexually exploitive materials," a much broader category at first blush. CP at 75. The other statute relied on defines "sexually explicit conduct," RCW 9.68A.011(4),[9] but not "sexually exploitive materials."

---

[9] RCW 9.68A.110 was amended effective June 4, 2024, after the Judgment and Sentence order in this case was executed. The amendments did not change subsection (4).

These statutes are not statements of the law that provide clarification to the ordinary person. Instead, they provide confusion. I do not believe a person of ordinary intelligence can search available statements of the law, somehow come across the two statements of law that when found do not define "sexually exploitative materials," and know what the condition proscribes so as to avoid a violation.

Tellingly, no opinion of this court actually *provides* a definition. The delegation of authority to an agent of the state to define the condition is too broad (whether a Department of Corrections officer or a specially-trained treatment provider is immaterial). When conditions are vague, they provide unfettered power of interpretation, and with it the power of arbitrary enforcement by the government, an ill our constitution prohibits. Accordingly, I respectfully dissent.

_____
Veljacic A.C.J.